## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOLLY JUDGE, | : | Civil Action No. 4:15-CV-0551 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| SHIKELLAMY SCHOOL | : | |
| DISTRICT, | : | |
| PATRICK M. KELLEY, | : | |
| DR. JAMES P. HARTMAN, | : | |
| WENDY WIEST, | : | |
| LORI GARMAN, | : | |
| KELLIE CIANFLONE, | : | |
| JAMES GARMAN, | : | |
| C. SCOTT KARPINSKI, | : | |
| THOMAS MICHAELS, | : | |
| MICHAEL STEPP, and | : | |
| DR. JEFFREY WALTER, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

September 28, 2015

Pending before this Court is a Motion to Dismiss Plaintiff's Complaint filed by all Defendants. The motion seeks to dismiss all claims asserted in the Complaint, including Plaintiff's claims for procedural due process, substantive due process, equal protection, and breach of contract, as well as her request for punitive damages. The matter has been fully briefed and is now ripe for disposition. In accordance with the following reasoning, Defendants' Motion to Dismiss is granted in part and denied in part.

# I. BACKGROUND

This action arises out of the termination[1] of Plaintiff, Holly Judge, from her position as principal of the Shikellamy Elementary School. Plaintiff's Complaint ¶ 19, March 19, 2015, ECF No. 1 (hereinafter "Pl.'s Complaint). She was employed by the Shikellamy School District in that position from October 2011 until June 20, 2014. *Id.* At all material times, she performed her work as principal of the elementary school in a good, professional, and competent manner. *Id.* ¶ 23.

On June 19, 2014, Plaintiff was summoned to a meeting with Defendant Kelley, District Superintendent, but was given no advance notice as to the purpose of the meeting. *Id.* ¶ 25. Following the meeting[2], she was given a letter signed by Defendant Kelley which explained the purpose of the meeting and detailed some particulars of the discussion between him and Plaintiff at that meeting. *Id.* He first explained that he had learned from outside sources that Plaintiff had been involved in a traffic stop under suspicion of driving under the influence. Pl.'s Complaint, Exhibit A. He further elucidated that at the meeting Plaintiff originally represented that she had not received a field sobriety test, although she later admitted that a blood alcohol test was conducted at the State Police barracks. *Id.* The letter went

---

[1] Although Plaintiff actually resigned from her position, she alleges that she was forced to do so under protest and was therefore constructively discharged. Pl.'s Complaint ¶ 27-28. Accordingly, she uses the term termination, rather than resignation, as Defendants call it, throughout her complaint. In this section of the Memorandum opinion, the Court will utilize the word that Plaintiff employs in her complaint.

[2] Plaintiff's complaint alleges that she was given this letter upon arrival at the meeting. Pl.'s Complaint ¶ 26. However, Defendant Kelley explicitly states in his letter, attached to her complaint as Exhibit A, that he was "writing this letter to [Plaintiff] following [their] meeting on this date in [her] office." Pl.'s Complaint Exhibit A.

on to inform Plaintiff that she had failed to disclose these events to Defendant

Kelley for twenty days and that, when confronted at their meeting, Plaintiff had

attempted to explain that no charges had been filed, "as if it was nothing more than

a routine traffic stop." *Id.* Finally, the letter requested Plaintiff's immediate

resignation and offered a neutral reference in the future if she should choose to

resign before 12:30 p.m. the next day. *Id.* In the alternative, Defendant Kelley

stated that if Plaintiff should choose not to resign and DUI charges were filed

against her, then he would be forced to issue a written statement of charges for

dismissal which would be based upon immorality, intemperance, and moral

turpitude. *Id.* He further explained that these charges for dismissal could have an

impact upon Plaintiff's status with the Department of Education. *Id.* Plaintiff

alleges that the next day she was forced to resign "under protest," and this

constituted a constructive discharge. *Id.* ¶ 27-28, 35.

Several months later, in October 2014, Defendant Kelley was arrested in

New York for aggravated DUI and for leaving the scene of a property damage

accident. *Id.* ¶ 36. The Shikellamy school board members only imposed a twenty

day unpaid suspension on Defendant Kelley for this conduct, despite having

terminated Plaintiff for her similar conduct. *Id.* ¶ 37-38.

As a result of the letter and her subsequent termination, Plaintiff alleges that

she has suffered damages to her reputation, and that her ability to continue to be

employed as an elementary school principal has been impaired. *Id.* ¶ 39. She has, moreover, suffered damages in the form of loss of income, employment benefits, and the inability to obtain another position with another school district. *Id.* ¶ 40. Because she alleges that the actions of the Defendants were "outrageous, extremely offensive and intentional and discriminatory," and that they "were performed with malicious, reckless indifference, and/or wanton disregard of Plaintiff's civil rights," she seeks an award of punitive damages. *Id.* ¶ 41-42, 46, 49, 55, 66.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff. *See Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). However, "the tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. *See Kost*, 1 F.3d at 183. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. At the motion to dismiss stage, the court considers whether

plaintiff is entitled to offer evidence to support the allegations in the complaint.
*Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-664.

"In considering a Rule 12(b)(6) motion, we must be mindful that federal courts require notice pleading, as opposed to the heightened standard of fact pleading." *Hellmann v. Kercher*, No. 07-1373, 2008 WL 1969311 at * 3 (W.D. Pa. May 5, 2008) (Lancaster, J.). Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds on which it rests,'" *Twombly*, 550 U.S. at 554 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief. *See Hellmann*, 2008 WL 1969311 at *3. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a

particular legal theory. *See Twombly*, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

The failure-to-state-a-claim standard of Rule 12(b)(6) "streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law." *Id*. at 326. If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id*. at 327.

## III. DISCUSSION

## A. Count I Procedural Due Process

Defendants initially argue that Plaintiff has not pled a procedural due process claim for several reasons. First, they contend that she did not request a hearing, as required under Pennsylvania law governing the dismissal of school district employees, and therefore she cannot allege that her failure to receive one was in violation of her procedural due process rights. Moreover, they argue, contrary to her assertions of constructive discharge, she actually resigned from her position and, accordingly, Defendants did not deprive her of her rights. Finally,

6

Defendants argue that Plaintiff's conduct was tantamount to "immoral behavior" under Pennsylvania law and thus there was cause to dismiss her.[3]

Plaintiff responds that she did have a constitutionally protected property interest in continued public employment pursuant to 24 P.S. § 11-1122, and that one DUI does not constitute an act of immorality sufficient to trigger the provisions of that law. Furthermore, she asserts that she had a protected liberty interest in her reputation which was violated when Defendants terminated her employment for allegedly engaging in conduct of intemperance, immorality and moral turpitude. Finally, she avers that she was denied her pre- and post-termination due process rights to sufficient notice and a hearing.[4]

To begin with, §1983 is not a source of substantive rights; rather, it merely provides a remedy for violations of constitutional rights. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 815 (1985). To establish a claim under 42 U.S.C. § 1983, Plaintiffs must initially demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law. *See Sameric Corp. of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 590 (3d Cir. 1998). As a preliminary matter, Plaintiff has alleged that the Defendants were

---

[3] As will be discussed within the opinion, the Court is unclear as to how this argument negates Plaintiff's procedural due process claim.

[4] Though she alleges that she was not afforded post-termination rights in violation of procedural due process, nowhere in her brief or her complaint does Plaintiff explain in what way she was denied any post-termination due process rights.

acting under color of state law when they committed the actions which allegedly violated her constitutional rights.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. PA Dep't. of Correction*, 544 F.3d 279, 285 (3d Cir. 2008) (citing *Ky. Dep't of Corr. V . Thompson*, 490 U.S. 454, 460 (1989)). In this case, Plaintiff alleges violations of both her property rights in continued public employment and her liberty rights in her reputation. The Court will address each in turn.

### 1. Property Interest in Continued Employment

"Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). This means that courts are directed to look to state law in determining whether a property interest exists in any given scenario. Consequently, this Court must determine whether Plaintiff had, pursuant to Pennsylvania law, a property interest

in continued employment as Elementary School Principal of Shikellamy School District.

Plaintiff alleges that she had a statutorily defined property interest in her continued employment as a professional employee under 24 P.S. § 11-1122. That section of the Public School Code of 1949 (hereinafter, the "School Code") provides, in pertinent part, "The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employee (sic) shall be [certain enumerated causes]." 24 P.S. §11-1122(a). Plaintiff qualifies as a professional employee pursuant to 24 P.S. § 11-1101(1) ("The term 'professional employe (sic)' shall include those who are certificated as . . . principals. . ."). Plaintiff's argument regarding the applicability of § 11-1122 appears to rely solely on her status as a professional employee; however, Plaintiff fails to recognize that pursuant its explicit wording, this section of the School Code applies only to professional employees who are under contract with the School District.[5] Nowhere in her complaint has Plaintiff pled that she was under contract with the School District.[6] Accordingly, to the extent Plaintiff predicates her claim for deprivation

---

[5] Moreover, pursuant to 24 P.S. § 11-1121(a), all contracts with professional employees must be "in writing, in duplicate, and shall be executed on behalf of the board of school directors by the president and secretary and signed by the professional employee."

[6] Notably, it is possible that, despite Plaintiff's position as a professional employee, she was not under contract. Specifically, 24 P.S. § 11-1121(b)(2) states, "Each board of school directors in all school districts shall hereafter enter into contracts, in writing, with each professional employe (sic) initially employed by a school district, on or after June 30, 1996, who has satisfactorily completed three (3) years of service in any school district of this Commonwealth." According to her complaint, Plaintiff was employed as principal from October 2011 to June 2014, just under the three years after which an employment contract is statutorily mandated.

of a property interest on the application of §11-1122, her claim is dismissed, without prejudice with leave to amend to allege the existence of an employment contract.

Nevertheless, it is clear that Plaintiff had a property interest in continued public employment, even without the existence of a contract. Under 24 P.S. § 5-514, "The board of school directors in any school district, except as herein otherwise provided, shall after due notice giving the reasons therefor, and after hearing if demanded, have the right at any time to remove any of its officers, employes (sic), or appointees for incompetency, intemperance, neglect of duty, violation of any of the school laws of this Commonwealth, or other improper conduct." This section appears to create a catchall provision which affords protections, albeit weaker ones, to public school employees not otherwise covered by statute. *See DeSimone v. Coatesville Area School Dist.* 248 F.Supp.2d 387, 392 (E.D.Pa. 2003). Similar to § 11-1122, this provision provides Plaintiff with a property interest in her continued employment which requires that she be terminated only for the specific enumerated causes. Consequently, this Court determines that Plaintiff has adequately pled the existence of a property interest in her continued employment as Elementary School Principal.

Next, the Court must assess whether Plaintiff was deprived of that property interest. Defendants characterize Plaintiff's exit from her position as a voluntary

resignation; Plaintiff, on the other hand, portrays her departure as one in which she was forced to resign and did so under protest, in a manner effectively amounting to a constructive discharge.

> Employee resignations and retirements are presumed to be voluntary. This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government and cannot contend that he was deprived of his due process rights.

*Leheny v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1990). The United States Court of Appeals for the Third Circuit has further articulated that there are two circumstances in which an employee's resignation will be considered involuntary, that is: "(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee." *Id.* at 228. Since Plaintiff has alleged nothing to the effect that Defendants deceived her or misrepresented a material fact to procure her resignation, this Court interprets her complaint to allege that she was forced to resign under coercion or duress and will analyze it accordingly.

In determining whether a resignation was procured involuntarily due to coercion or duress, courts have considered several factors, including: (1) whether the employee was presented with an alternative to resignation; (2) whether the

employee understood the nature of the choices she was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the employee had the advice of counsel. *See O'Connell v. County of Northampton*, 79 F.Supp.2d 529, 533 (E.D.Pa. 1999) (citing *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995)).  In this case, Plaintiff has alleged that she was given approximately one day to choose whether she would resign or face termination proceedings.  It is not clear to the Court whether Plaintiff had the advice of counsel in electing the former, nor whether she was permitted to select the effective date of her resignation.  However, at this stage of the proceedings, this is sufficient to allege that she was constructively discharged and therefore deprived of her constitutionally protected property interest in continued public employment.[7]

Finally, Plaintiff must also allege that her deprivation occurred without due process of law.  Pursuant to *Cleveland Bd. of Educ. v. Loudermill*, an essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and an opportunity for a hearing.  470 U.S. 532, 542 (1985).  This means that an employee who possesses a constitutionally protected property interest in employment must be given at least some way to respond to the charges against her

---

[7] Both parties articulate arguments regarding whether Plaintiff was properly terminated for the enumerated causes. However, this is not relevant to Plaintiff's procedural due process claim because the issue is not whether Defendants followed the dictates of either § 11-1122 or § 5-514; rather, the issue is whether Defendants afforded her with due process of law in doing so.

prior to discharge. *Id.* Plaintiff alleges that she was not given any type of hearing but was, rather, summarily forced to resign.[8] To the extent Plaintiff was deprived of her property interest in continued public employment through this constructive discharge, as alleged, she has properly asserted that she did not receive a pre-termination hearing in contravention of her due process rights. Accordingly, insofar as Plaintiff predicates her claim for deprivation of a property interest on the application of § 5-514, Defendants' motion to dismiss is denied.

      2.    <u>Liberty Interest in Reputation</u>

Plaintiff also asserts a liberty interest in her reputation, of which she was deprived when Defendants terminated her employment because they claimed she had engaged in conduct of intemperance, immorality, and moral turpitude. Defendants do not respond to this argument. Effectively, Plaintiff is asserting a violation of her procedural due process rights based on a "stigma-plus" theory.

The United States Supreme Court has held that an individual has a protected interest in his or her reputation. *See Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971) ("Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to

---

[8] Although Defendant argues that Plaintiff was entitled to a hearing if she requested one, which she did not do, the application of that provision of § 5-514 becomes muddled given Plaintiff's assertion that she was given only one day in which to resign and was therefore effectively discharged. That is, it is unclear to this Court when, given the alleged constructive discharge, Plaintiff would have had the opportunity to request a hearing. Nevertheless, *Loudermill* requires that an employee with a property interest in her employment be given the opportunity for a hearing. Accordingly, in the instant case, insofar as Plaintiff was constructively discharged pursuant to the terms alleged, it is clear that she had no legitimate opportunity to request such a hearing.

be heard are essential.").  However, the Supreme Court has since clarified that reputation alone does not create a protected liberty interest; "[r]ather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)).  This is known as the stigma-plus test.  In the public employment context, the Third Circuit has held that the stigma-plus test applies when an employer "creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Id*. (quoting *Codd v. Velger*, 429 U.S. 624, 628 (1977)).  The purportedly stigmatizing statement must be made publicly. *See id.*

In this case, Plaintiff alleges that she was discharged for failing to notify the school district about the possibility that she would be charged with a DUI.  She attaches to her complaint the above-referenced letter from Defendant Kelley in which he characterizes her actions as ones involving immorality, intemperance, and moral turpitude.  It is these characterizations to which she appears to take issue.  However, Plaintiff has not alleged that these statements, which were sent to her in private letter from Defendant Kelley, were made public as required to state a deprivation of a liberty interest. *See Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988) ("[A] plaintiff must plead that the allegedly stigmatizing information

was 'published' or otherwise disseminated by his government employer to the public.").[9] Accordingly, Plaintiff's claim for procedural due process violations based on the deprivation of her liberty interest in her reputation must be dismissed without prejudice, with leave to amend to allege specifically how the information was published by the Defendants.

**B. Count II Substantive Due Process**

Defendant next argues that Plaintiff's claim for violation of her substantive due process rights must be dismissed for two reasons. First, they contend that the right to hold public employment is not a fundamental right and therefore not protected by substantive due process. Additionally, they argue that the conduct alleged could not possibly shock the conscience. Plaintiff responds only to the latter contention, arguing that a reasonable fact-finder could conclude that Defendants' conduct, as alleged, shocks the conscience and that she should be entitled to discover additional facts in support of her claim.

To prevail on a substantive due process claim challenging a state actor's conduct, "a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139-40 (3d Cir. 2000). This Court has already found that Plaintiff has sufficiently alleged an

---

[9] Notably, the letter from Defendant Kelley states that if Plaintiff resigned immediately, which she did, he would offer a neutral reference in the future.

established property interest in her employment pursuant to state law. However, "not all property interests worthy of procedural due process protection are protected by the concept of substantive due process." *Reich v. Beharry*, 883 F.2d 239, 243 (3d Cir. 1989). Whether a property interest is protected for purposes of substantive due process is a question that is not answered by state law. *See Hill*, 455 F.3d at 234 n.12. Rather, a property interest is protected for the purposes of substantive due process only if it is considered "fundamental" under the United States Constitution. *Nicholas*, 227 F.3d at 140. "If the interest is not 'fundamental,' however, the government action is entirely outside the ambit of substantive process and will be upheld so long as the state satisfies the requirements of procedural due process." *Id.* at 142.

With regard to the case at bar, the Third Circuit has explicitly determined that public employment is not a fundamental right entitled to substantive due process protection. *Id.* at 143. Specifically, the court has held that "public employment is a wholly state-created contract right; it bears little resemblance to other rights and property interests that have been deemed fundamental under the Constitution." *Id.* As such, although Plaintiff can state a claim for procedural due process violations based on her termination from public employment, her substantive due process claim on that same ground must fail.

Moreover, to the extent Plaintiff's substantive due process claim rests on reputational injury that decreased her ability to earn a living, it also fails.[10] *See Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 399-404 (3d Cir. 2000) (defamatory statements that curtail a plaintiff's business opportunities do not suffice to support a substantive due process claim). Consequently, Defendants' motion to dismiss Count II of Plaintiff's complaint is granted and Plaintiff's substantive due process claim is dismissed with prejudice.[11]

## C. Count III Equal Protection

Defendants next argue that Plaintiff's equal protection claim must be dismissed because she has failed to demonstrate facts sufficient to establish that she was treated differently from "similarly situated individuals." Rather, they argue, despite Plaintiffs' attempt to classify Defendant Kelley as such, he is not a similarly situated individual because he holds a completely different position. Plaintiff counters that the parties need not be identical, but rather must only be alike in all relevant respects. Moreover, she argues, determining whether an individual is "similarly situated" to another is a highly factual inquiry which is inappropriate at the motion to dismiss stage.

---

[10] Though Plaintiff has not necessarily made this argument in her brief in opposition, the Court finds it appropriate to address the issue given Plaintiff's reliance on it with regard to her procedural due process claim.

[11] Because the Court grants Defendants' motion on the grounds that Plaintiff's property interest in her employment is not tantamount to a fundamental right under the Constitution, the Court need not address the parties' arguments regarding whether the conduct alleged can be said to shock the conscience.

The Fourteenth Amendment "requires that all persons . . . shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Hayes v. Missouri*, 120 U.S. 68, 71-72 (1887). Two theories exist upon which a plaintiff may assert an equal protection claim. "The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class." *D'Altilio v. Dover Twp.*, Civil Action No. 1:06-CV-1931, 2007 WL 2845073, at *8 (M.D.Pa. Sept. 26, 2007) (Conner, J.). To assert a claim under this theory, a plaintiff must allege the following elements: (1) that she is a member of a protected class; (2) that she was treated differently from similarly situated individuals; and (3) that this disparate treatment was based on her membership in the protected class. *See Barnett v. School Dist. of Lancaster*, Civil Action No. 14-2414, 2015 WL 1312730, at * 3 (E.D.Pa. Mar. 24, 2015) (citing *Kasper v. County of Bucks*, 514 Fed.Appx. 210, 214 (3d Cir. 2013)). Plaintiff has alleged no facts from which this Court can infer that she was a member of a protected class and that the disparate treatment she suffered was based upon her membership in that protected class. Moreover, she has failed to argue such a claim in her brief.

Accordingly, as a result of her failure to allege a traditional equal protection claim, Plaintiff appears to assert an equal protection claim based upon a class-of-one theory. Under this theory, a plaintiff may assert an equal protection claim

even absent protected class status by alleging irrational and intentional differential treatment in comparison to similarly situated individuals. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, the Supreme Court has qualified that this "class-of-one theory of equal protection has no application in the public employment context." *Enquist v. Oregon Dept. of Agr.,* 553 U.S. 591, 602 (2008); *see also Kasper*, 514 Fed.Appx. at 214; *Scavone v. Pennsylvania State Police*, 501 Fed.Appx. 179, 181 (3d Cir. 2012); *Conrad v. Pennsylvania State Police*, 360 Fed.Appx. 337, 339 (3d Cir. 2010).  Consequently, Defendants' motion to dismiss Count III of Plaintiff's complaint is granted and Plaintiff's equal protection claim is also dismissed with prejudice.

## D. Count IV Breach of Contract

Defendant also argues that Plaintiff's claim for breach of contract must be dismissed because Plaintiff has failed to identify the nature and extent of her alleged contractual relationship with Defendants, its essential terms, and what specific terms Defendants may have breached.  In her response, Plaintiff appears to rest her breach of contract claim on one of two possibilities: (1) an implied contract between her and the Defendants and/or (2) a statutorily obligated contractual relationship stemming from § 11-1122 of the Public School Code.

To plead a cause of action for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty

imposed by that contract; and (3) resultant damages. *See CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super. 1999). "While not every term of a contract must be stated in complete detail, every element must be specifically pleaded." *Id.* (citing *Snaith v. Snaith*, 422 A.2d 1379, 1382 (Pa.Super. 1980)).

As explained previously, Plaintiff has failed to allege the existence of an employment contract separate and apart from the application of Pennsylvania statutory law; she has also failed to specifically plead its essential terms. The existence of a contract is the preeminent element of a breach of contract claim, without which Plaintiff's claim must fail. Importantly, the existence of a Pennsylvania statute which provides for termination of public school employees only for specific causes does not create a contract between Plaintiff and her employer, the School District. If Plaintiff believes that Defendants have acted in contravention of that mandate, her remedy is statutory; she cannot claim a contractual remedy where there has been no actual contract.

Furthermore, to the extent Plaintiff attempts to aver in her brief that there was an implied contract of employment between her and the School District, this argument also fails. "The general rule in Pennsylvania is that employment is at-will unless there is a statutory or contractual provision to the contrary." *Wallet v. Pennsylvania Turnkpike Comm'n*, 528 Fed.Appx. 175, 180 (3d Cir. 2013). "The at-will employment doctrine provides that absent a statutory or contractual

provision to the contrary, the employer and employee each have the power to terminate the employment relationship for any or no reason." *Weaver v. Harpster*, 975 A.2d 555, 557 n.3 (Pa. 2009). In the absence of an express contract, "[a]n 'implied-in-fact' contract can also suffice, if additional consideration passes from the employee to the employer 'from which the court can infer the parties intended to overcome the at-will presumption.'" *Preobrazhenskaya v. Mercy Hall Infirmary*, 71 Fed.Appx. 936, 940 (3d Cir. 2003) (quoting *Raines v. Haverford College*, 849 F.Supp. 1009, 1012 (E.D.Pa. 1994)).

Courts have found additional consideration sufficient to overcome the at-will presumption when the employee "affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform." *Jones v. Flaster/Greenberg P.C.*, Civil Action No. 13-2771, 2013 WL 6846916, at * 3 (E.D.Pa. Dec. 30, 2013). In the alternative, courts have also held that "[i]n the employment context, the communication to employees of certain rights, policies and procedures may constitute an offer of an employment contract with those terms. The employee signifies acceptance of the terms and conditions by continuing to perform the duties of his or her job; no additional or special consideration is required." *Darlington v. General Electric*, 504 A.2d 306, 320 (Pa.Super. 1986).

21

Although generally the issue of whether parties intended to create an implied contract would be an issue for the finder of fact, *see DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d 865, 868 (Pa.Super. 1988), Plaintiff must still set forth sufficient facts to allege the existence of an implied contract. *See Hellman*, 2008 WL 1969311, at *3 ("[E]ven under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief under it. Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory."). In this case, Plaintiff has set forth no facts which would demonstrate the existence of an implied contract. The Court will not infer a contract merely from Plaintiff's implied assertion that one existed.[12] Accordingly, Plaintiff's claim for breach of contract is dismissed without prejudice, with leave to amend to allege specifically the existence of a written or oral employment contract, or specific facts from which this Court could infer the existence of an implied contract.

**E. Punitive Damages**

Defendant argues that Plaintiff's claim for punitive damages must be dismissed because Plaintiff's complaint is devoid of any allegations of outrageous

---

[12] Moreover, Plaintiff has not even included this theory it in her complaint. Rather, she relies solely on her brief in opposition for this argument.

conduct by the Defendants to warrant the imposition of punitive damages. Plaintiff

responds that she has set forth sufficient allegations to entitle her to request

punitive damages, specifically, that Defendant Kelley and the school board as a

whole acted with evil motive and intent when terminating her. She argues further

that they recklessly disregarded the severe consequences of their actions in that

their decision deprived Plaintiff of her means of livelihood and disparaged her

reputation.

Punitive damages are available in a proper case asserted pursuant to § 1983.

*See Smith v. Wade*, 461 U.S. 30, 30 (1983). A plaintiff in a § 1983 case may

qualify for a punitive damages award when the defendant's conduct is, at a

minimum, reckless or callous. *See Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d

Cir. 1989); *see also Wade*, 461 U.S. at 47-48 (holding that a finding of

"recklessness, serious indifference to or disregard for the rights of others, or even

gross negligence" permitted an award of punitive damages). Although punitive

damages awards may also be available if the defendant's conduct is intentional or

motivated by evil motive, it need not meet that higher standard. Specifically, as

the United States Supreme Court has stated, "[A] jury may be permitted to assess

punitive damages in an action under § 1983 when the defendant's conduct is

shown to be motivated by evil motive or intent, *or* when it involves reckless or

callous indifference to the federally protected rights of others." *Wade*, 461 U.S. at 56.

However, this standard applies only to defendants sued in their individual capacities; neither municipalities nor defendants sued in their official capacities can be liable for punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) (holding that punitive damages cannot be awarded against municipalities); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 13 (1985) (holding that suits against individual defendants in their official capacities are equivalent to suits against the municipalities that employed them; therefore the individual defendants are immune from punitive damages); *see also Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities"). It is undisputed that public school districts, such as Shikellamy, are considered municipal entities. *See Doe v. Allentown Sch. Dist.*, Civil Action No. 06-cv-1926, 2009 WL 536671, at * 5 (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)). Accordingly, all requests for punitive damages against Defendant Shikellamy School District and the individual Defendants, to the extent they are sued in their official capacities, must be dismissed.

However, Plaintiff has also asserted claims against the individual Defendants in their individual capacities. Consequently, the Court must determine

24

whether Plaintiff has adequately pled her multiple requests for punitive damages.

It is well settled in Pennsylvania jurisprudence that "[p]unitive damages will not be assessed for a breach of mere contractual duties. Only where the person who breaks a contract also breaches some duty imposed by society will compensatory or punitive damages be imposed against the wrongdoer in order to punish the wrongful act and in order to serve as a deterrent." *Daniel Adams Associates v. Rimbach Publishing Inc.*, 429 A.2d 726, 728 (Pa.Super. 1981). This means that, in order to recover punitive damages, a plaintiff must plead some sort of recovery in tort which arises out of the same transaction. *See Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.*, 496 A.2d 840, 844 (Pa.Super. 1985). Because there are no allegations in the complaint to establish a breach of any societal duty, Defendants' motion to dismiss the punitive damages request is granted insofar as the request is asserted pursuant to Plaintiff's breach of contract claim.

However, as explained above, punitive damages are available in a proper case asserted pursuant to § 1983 when the defendant's conduct is, at a minimum, reckless or callous. *See Wade*, 461 U.S. at 30. Plaintiff has alleged that the actions of the individual Defendants were "outrageous, extremely offensive and intentional and discriminatory toward [Plaintiff] and were performed with malicious, reckless indifference, and/or wanton disregard of Plaintiff's civil rights." Because an inquiry into the availability of punitive damages and the intent behind a

defendant's conduct is inherently fact-specific, the Court will not decide at this stage whether Plaintiff is entitled to request punitive damages. Therefore, this Court will deny, at this time, Defendants' motion to dismiss any demand of punitive damages with respect to her § 1983 claims against the individual Defendants.[13]

## F. Defenses of Individual Defendants

### 1.  Redundancy

Defendants next argue that this Court should dismiss all claims against the individual defendants asserted in their official capacities because such claims are redundant of the claims asserted against the School District. They contend that the law is clear that such parties must be dismissed from the action. Plaintiff responds that redundancy is not a proper basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). Moreover, she contends, dismissal is discretionary and in this case naming the individual Defendants in their official capacities would not unnecessarily confuse the issues or clutter the case. In their arguments, both parties appear to assume that the claims are only asserted against the individual Defendants in their official capacities, rather than in their individual capacities.

Section 1983 lawsuits against individuals in their official capacities "represent only another way of pleading an action against an entity of which an

---

[13] The Court notes, however, that because this Court simultaneously dismisses the individual Defendants from this action on the basis of qualified immunity, Plaintiff's claims for punitive damages are also effectively dismissed.

officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

Defendants who are public officials can be sued in either their individual or their official capacities; the difference between the two is often unclear. As a result, the United States Supreme Court has attempted to distinguish them, holding that individual capacity suits "seek to impose personal liability upon a government official for actions he takes under color of state law." *Id.* at 165. In such a case, the plaintiff need only show that the official, acting under color of state law, caused the deprivation of a federal right. *Id.* at 166. On the other hand, in an official capacity suit, the suit is not against the official personally; rather, the real party in interest is the entity. *See id*. Therefore, because a governmental entity is only liable under § 1983 when it is a moving force behind the deprivation, "in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id*. (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)).

Because official capacities suits are just another way of suing the entity itself, many courts in this and surrounding districts have held that claims asserted against individual defendants in their official capacities are redundant if the plaintiff has also sued the entity. *See, e.g., Marcovich v. Panther Valley School Dist.*, Civil Action No. 3:13-3096, 2014 WL 3735292, at * 4 (M.D.Pa. July 28, 2014) (Mannion, J.) (citing *Burton v. City of Philadelphia*, 121 F.Supp.2d 810, 812

(E.D.Pa. 2000)) ("To the extent that the claims against Ms. Prorembo in her official capacity, they are redundant of the claims against the governmental entity and may be dismissed."); *E.B. v. Woodland Hills School Dist.*, Civil Action No. 10-0442, 2010 WL 2817201, at * 3 (W.D.Pa. July 16, 2010) (Lancaster, J.) ("Therefore, the official capacity suits against defendants Calinger, Johnston and Kline are unnecessary because they are essentially suits against the School District, which is already a named Defendant."); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988) (holding that the claims against the defendant officials in their official capacities were merely duplications of the claims against the Township itself); *Snook v. Midd-West School Dist.*, No. 4:14-CV-948, 2015 WL 1209756, at *4 (M.D.Pa. Mar. 16, 2015) (Mariani, J.). The Court finds the reasoning of those cases to be persuasive and will dismiss all claims asserted against the individual Defendants in their official capacities because these claims unnecessarily clutter the case. *See, e.g., Hordych v. Borough of North East*, No. 10-16E, 2010 WL 1707735, at *6 (W.D.Pa. Apr. 27, 2010) (holding that dismissal on the basis of redundancy is discretionary, but nevertheless dismissing the claims because they unnecessarily cluttered the case and they were likely to be confusing to a jury).

Before doing so, however, this Court must address Plaintiff's argument that redundancy is not a proper basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). Plaintiff cites to only one case from the Eastern District of

Pennsylvania in support of her argument, *Coffman v. Wilson Police Department*. In that case, the court held that a Rule 12(b)(6) motion does not address the redundancy of claims; it only questions their validity. 739 F.Supp. 257, 261 (E.D.Pa. 1990). However, the court did not cite to any case law in support of that proposition and it is clear from the multitude of cases cited above that a 12(b)(6) motion is, in fact, a proper avenue through which to dismiss redundant parties.

Be that as it may, despite Plaintiff's failure to make the argument in her brief, she has in fact sued each individual Defendant in both their individual and official capacities. Moreover, in her complaint she avers that at all times relevant, "Defendants were acting under color of law and color of their authority as officials of Shikellamy School District." She goes on to detail the specific actions that the individuals took which contributed to her constitutional injury. Though the Court today undertakes to dismiss all claims against the individual Defendants in their official capacities, at this stage of the litigation it cannot similarly dismiss all claims against them in their individual capacities on this basis. Accordingly, this Court will dismiss all claims asserted against the individual Defendants in their official capacities as duplicitous of the claims asserted against the school district.

2.    High Public Official Immunity

Defendants also argue that the claims asserted by Plaintiff against the individual Defendants must be dismissed because these individual Defendants

enjoy high public official immunity. Plaintiff responds first that the doctrine of high public official immunity does not apply to cases under § 1983 or breach of contract cases. Moreover, she contends, even if it did it would not apply to the instant action where the conduct of Defendants fell outside the scope of their official authority.

Pennsylvania recognizes a doctrine of absolute immunity for high public officials. *See Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996). Generally, high public official immunity immunizes certain officials "from all civil suits arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority." *Id.* Though the doctrine was first articulated in the context of defamation lawsuits, it has since expanded to encompass a variety of actions outside the context of defamation, including retaliatory discharge, economic interference, loss of consortium, invasion of privacy, and intentional infliction of emotional distress, to name a few. *See Osiris Enterprises v. Borough of Whitehall*, 877 A.2d 560, 567 (Pa.Cmwlth. 2005); *see also Zugarek v. Southern Tioga School Dist.*, 214 F.Supp.2d 468, 479 (M.D.Pa. 2002) (McClure, J.).

However, all of these enumerated claims for which high public officials are entitled to absolute immunity under Pennsylvania law are tort claims. *See Kane v.*

*Chester County Dept. of Children, Youth and Families*, 10 F.Supp.3d 671, 697

(E.D.Pa. 2014) ("Under Pennsylvania law, 'high public officials' are absolutely

immune from *tort liability* stemming from action taken within the scope of their

authority." (emphasis added)).  This Court is unable to find a single case in which a

Pennsylvania court has extended the doctrine to include either contract or

constitutional claims.  Importantly, it is clear to this Court that Defendants cannot

utilize a state immunity such as the one at issue to insulate themselves from the

application of a federal law under § 1983.  The United States Supreme Court has

explicitly stated that "[a]s to persons that Congress subjected to liability, individual

states may not exempt such persons from federal liability in state court by relying

on their own common-law heritage; to hold otherwise would enable states to

nullify for their own people the legislative decisions that congress has made on

behalf of all the people." *Howlett v. Rose*, 496 U.S. 356, (1990); *see also Martinez

v. State of California*, 444 U.S. 277, 284 n.8 (1980) ("Conduct by persons acting

under color of state law which is wrongful under 42 U.S.C. § 1983 or § 1985(3)

cannot be immunized by state law.  A construction of the federal statute which

permitted a state immunity defense to have controlling effect would transmute a

basic guarantee into an illusory promise; and the supremacy clause of the

constitution insures that the proper construction may be enforced.").  For these

reasons, the Court declines to extend the application of Pennsylvania's high public

official immunity in the instant case to shield Defendants from liability for any alleged constitutional or contractual violations. Accordingly, Defendants' motion to dismiss on this basis is denied.

3.  Qualified Immunity

Finally, the individual Defendants argue that they are entitled to qualified immunity on Plaintiffs' claims because it would not be unreasonable for the school board members or superintendent to believe that it is lawful to ask for the resignation of a principal who was faced with possible prosecution for DUI, and who failed to disclose the severity of her conduct to the School District because a principal is in a position of respect and authority and should be a positive role model for students. Thus, they contend, Defendants were not violating a clearly established statutory or constitutional right when they asked for Plaintiff's resignation. Plaintiff responds, in pertinent part, that she had a constitutionally protected property interest in continued employment and could only be terminated for cause, and upon notice and hearing, of which a reasonable person would be aware.[14]

The purpose of qualified immunity is to protect government officials "from liability for civil damages insofar as their conduct does not violate clearly

---

[14] Plaintiff has made other arguments pertaining to her other constitutional claims, including her substantive due process and equal protection claims. However, because the Court dismisses those claims today for failure to state a claim upon which relief can be granted, I will only address Plaintiff's opposition as it relates to her procedural due process claim.

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Thus, law enforcement officials who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity." *Sharrar v. Felsing*, 128, F.3d 810, 826 (3d Cir. 1997). Significantly, qualified immunity is intended to be an immunity from suit, rather than simply a defense to liability, which means that its protection is effectively lost if a defendant is required to go to trial. *See Saucier v. Katz*, 533 U.S. 194, 200-1 (2001).

In determining whether a defendant is entitled to the protections of qualified immunity, courts employ a two-part test. First, the court must consider whether the facts that the plaintiff has demonstrated make out a violation of a constitutional right. *See id.*, 533 U.S. at 201. If the plaintiff has satisfied that inquiry, the court must next decide whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. *See id*. The Supreme Court has recently stressed that there is no mandatory order in which to consider the two prongs of this qualified immunity analysis. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

Defendant argues primarily that the rights at issue were not clearly established. In determining whether a constitutional right was clearly established, a broad and generalized declaration that a clearly established federal right was violated is insufficient. *See Anderson v. Creighton*, 483 U.S. 632, 640 (1987) (holding that the mere assertion that the Fourth Amendment prohibits warrantless searches without probable cause and exigent circumstances was not enough to demonstrate that the right was clearly established). Rather, in order for a constitutional right to be 'clearly established,' "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right." *Id*. at 640-41. Put another way, for the purposes of the qualified immunity analysis, a right is considered clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

It is has often been assumed in the Third Circuit, without much comment, that if an employee is constructively discharged, he is entitled to certain due process protections, including a pre-discharge hearing. *See Hill*, 455 F.3d at 245-46 (holding, on a motion to dismiss, that Plaintiff had sufficiently stated a claim for violations of his procedural due process rights, thereby implying that a deprivation

can be predicated on a constructive discharge); *see also Rusnak v. Williams*, 44
Fed.Appx. 555, 559 (3d Cir 2002) (holding, in the inverse, that Plaintiff had not
sufficiently established his claim for constructive discharge and therefore his
procedural due process claim must fail).  The parties have not cited to any cases
which expressly state this proposition, and the Court can find none.

Moreover, the law on what constitutes a constructive discharge is even less
clearly established, given the increasingly divergent situations in which employees
have claimed or established constructive discharge.  As far as this Court can
discern, Plaintiff here rests her allegation of constructive discharge on the shortage
of time that she was given to think about and respond to Defendant Kelley's
request for resignation.  At the same time, though Defendant Kelley provided
Plaintiff with less than twenty-four (24) hours in which to determine whether she
wanted to resign to procure a neutral reference, he also provided her with the
reasonable alternative of foregoing resignation and allowing Defendants to issue a
written statement of charges for dismissal. Pl.'s Complaint, Ex. A.  He also
informed her that these charges might result in an impact upon Plaintiff's status
with the Department of Education. *Id.*

Plaintiff has cited to no law which would demonstrate that in such a situation
it was clearly established that Defendants must have provided her with a hearing
prior to her resignation, and this Court has found none that are factually similar,

particularly considering Defendants' offer of a reasonable alternative to her resignation. In fact, the relevant case law would tend to suggest otherwise. *See, e.g., Caruso v. Superior Court of Delaware*, Civ. Action No. 12-277-GMS-CJB, 2013 WL 1558023, at * 8 (D.Del. Apr. 12, 2013) ("It is important to note that when considering these factors [for constructive discharge claims], the mere fact that an employee is faced with a choice between resignation, on the one hand, and possible termination, on the other hand, is not enough to show that the separation was involuntary."); *Leheny*, 183 F.3d at 227 ("If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government[.]"); *Hargray*, 57 F.3d at 1568 ("[R]esignations can be voluntary even where the only alternative to resignation is facing possible termination for cause or criminal charges[.]").

Accordingly, this Court holds that it is not a clearly established deprivation, for the purposes of procedural due process, to offer Plaintiff two alternatives – resignation with a neutral reference or dismissal charges with whatever negative consequences that might ensue – even though she was given little time to make her decision. A reasonable school board official in that situation would not know, especially without any case law on point, that it was unlawful to request Plaintiff's

resignation in the face of such a reasonable alternative.[15]  The individual

Defendants' requests for qualified immunity are therefore granted.

## IV. CONCLUSION

In accordance with the foregoing reasoning, Defendants' Motion to Dismiss

is granted in part and denied in part.  With respect to Plaintiff's procedural due

process claim in Count I, to the extent it is predicated on her property interest in

her job as codified by 24 P.S. § 11-1122 or upon Plaintiff's liberty interest in her

reputation, Defendants' motion to dismiss is granted without prejudice, with leave

to amend in accordance with this Court's decision.  However, to the extent

Plaintiff's procedural due process claim is predicated on her property interest in

her job as codified by 24 P.S. § 5-514, Defendant's motion to dismiss is denied.  In

addition, Defendants' motion to dismiss is granted with prejudice with respect to

Plaintiff's substantive due process and equal protection claims in Counts II and III.

Moreover, Defendants' motion to dismiss is granted with respect to Plaintiff's

breach of contract claim in Count IV without prejudice with leave to amend in

accordance with the Court's decision.  Finally, Plaintiff's claims for punitive

damages are dismissed as against the School District and the individual Defendants

to the extent they are sued in their official capacities.

---

[15] The Court by no means intends to foreclose the possibility that at a later stage of the proceedings the finder of fact may determine that the circumstance of Plaintiff's resignation amounts to a constructive discharge.  Rather, the Court now holds only that it would not be clear to reasonable school board officials in the situation confronted that their conduct was unlawful.

With regard to the defenses of the individual Defendants, Defendants'
request that the claims against the individual Defendants in their official capacities
be dismissed on the basis of redundancy is granted.  Their request for high public
official immunity is denied.  Finally, the individual Defendants are granted
qualified immunity and accordingly dismissed from the instant action.

BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge