**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOLLY JUDGE, | : | Case No. 4:15-CV-00551 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| SHIKELLAMY SCHOOL DISTRICT,: | | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**May 1, 2017**

The story of Holly Judge's professional career undoubtedly serves as

cautionary tale concerning the consequences of driving under the influence.  Ms.

Judge began her career as a promising young teacher and moved steadily into the

ranks of school administration.  Her professional career, however, was quickly

halted by the events of May 30, 2014.  On that day, Ms. Judge was arrested for

driving under the influence.  When her employer—Shikellamy School District—

learned of this arrest more than two weeks later, Ms. Judge was presented with two

alternatives: resign or face the filing of written charges for dismissal.  Ms. Judge

chose the former.  Through this suit, she now attempts to characterize that decision

as involuntarily procured—in legal parlance, a constructive discharge constituting

both a violation of her right to procedural due process under the Fourteenth

Amendment to the United States Constitution and a breach of the employment contract she had with the Shikellamy School District.

The parties have since completed factual discovery concerning these claims. The issue now before this Court is whether that factual discovery reveals a genuine issue of material fact such that a reasonable jury could find in favor of Ms. Judge. Defendant Shikellamy School District has filed a Motion for Summary Judgement arguing that no such dispute exists and it is thus entitled to judgment as a matter of law. Having considered the arguments advanced by both parties, I agree with Shikellamy School District. Its Motion will therefore be granted, and judgment will be entered in its favor.

## I.      INTRODUCTION

Plaintiff Holly Judge ("Judge") commenced this action on March 19, 2015 against Shikellamy School District, Patrick Kelley-Superintendent, and Shikellamy School District Board of Education members Dr. James Hartman, Wendy Wiest, Lori Garman, Kellie Cianflone, James Garman, C. Scott Karpinski, Thomas Michaels, Michael Stepp, and Dr. Jeffrey Walter. In her original Complaint, she alleged four claims: (1) a claim under 42 U.S.C. § 1983 for alleged violation of her Fourteenth Amendment right to procedural due process; (2) a claim under 42 U.S.C. § 1983 for alleged violation of her Fourteenth Amendment right to substantive due process; (3) a claim under 42 U.S.C. § 1983 for alleged violation

of her Fourteenth Amendment right to equal protection under the law; and (4) a common law claim for breach of contract.[1]  Defendant Board of Education members thereafter filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) alleging (1) to the extent they are sued in their official capacity, they are entitled to high public official immunity; (2) to the extent they are sued in their individual capacity, they are entitled to qualified immunity; and (3) Plaintiff failed to state a claim upon which relief can be granted for all of the four alleged counts.[2]

On September 28, 2015, I issued a Memorandum and accompanying Order which partially granted Defendant Board of Education members' motion, and significantly narrowed the remaining defendants and claims.[3]  Defendant Board of Education members and Superintendent Patrick Kelley were dismissed in totality from the action, and Judge's claims under Section 1983 for violation of her Fourteenth Amendment substantive due process and equal protection rights were dismissed, together with her breach of contract claim.  Judge was, however, granted leave to amend both her breach of contract claim and her procedural due process claim to allege the existence of a contract affording the protections of 24 P.S. § 11-1122.  On October 8, 2015, Judge filed an Amended Complaint against

---

[1] ECF No. 1.

[2] ECF No. 7.

[3] ECF Nos. 15 & 16.

the sole remaining defendant—Shikellamy School District— alleging (1) a claim under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment right to procedural due process; and (2) a claim for breach of an employment contract entered pursuant to 24 P.S. § 11-1122.[4]  Shikellamy School District thereafter answered on October 22, 2015, and the parties began factual discovery.[5]

Following the completion of discovery, Shikellamy School District filed a Motion for Summary Judgment seeking the entry of final judgment on both claims in favor of Defendant.[6]  It has been fully briefed, and is now ripe for disposition.[7]

## II.  FACTUAL BACKGROUND

### A.  In August 2000, Holly Judge began her career in education.  Over the next fourteen years, she held various teaching and administrative positions of gradually increasing responsibility.

Holly Judge is a 2000 graduate of King's College, where she received a Bachelor of Arts degree in Elementary Education with a minor in Psychology.[8]  In 2006, she earned a Master of Arts degree from King's College in Reading Education, and in 2007, a Master of Science degree from Wilkes University in K-12 Administration and Supervision.[9]  Judge has also completed 40 credits toward a

---

[4]  ECF No. 17.

[5]  ECF No. 18.

[6]  ECF No. 25.

[7]  ECF Nos. 27, 29, & 30.

[8]  Judge Dep. (ECF No. 25-3), Exhibit 17.

[9]  Id.

doctoral degree in educational leadership from Wilkes University.[10] She currently holds an administrative/principal's certification from the Commonwealth of Pennsylvania allowing her to serve as a principal for pre-kindergarten through twelfth grade.[11]

Since the time of her initial graduation from King's College, Judge has been continually employed in education.[12] The non-administrative positions Judge held include: (1) Education Specialist for the Early Intervention Program at John Heinz Institute/Hazleton Area School District from 2000 through 2003; (2) Autistic Support Teacher from 2003 through 2004; (3) Reading Specialist for Northeast Educational Intermediate Unit # 19 from 2004 through 2006; and (4) Reading Specialist at Lake Lehman School District from 2006 through 2008.[13] In 2008, Judge progressed to an administrative position. Her first administrative post, and that immediately preceding her employment by Shikellamy School District, was Assistant Junior-Senior High School Principal and Athletic Director at

---

[10] Judge Dep. (ECF No. 25-3), at 16:13-18; Exhibit 17.

[11] Def.'s Statement of Material Facts (ECF No. 26)("Def.'s SUMF") ¶¶ 3–4, at 2; Pl.'s Response to Def.'s Statement of Material Facts (ECF No. 28)("Pl.'s Resp.") ¶¶ 3–4, at 1.

[12] Def.'s SUMF ¶ 4, at 2; Pl.'s Resp. ¶ 4, at 1.

[13] Judge Dep. (ECF No. 25-3), Exhibit 17.

Susquehanna Community School District.[14]  She held that position from 2008 through 2011.[15]

**B.    Judge began her career with Shikellamy School District during the 2011-2012 school year as Principal of Oaklyn Elementary.  In that position, she was responsible for teacher discipline and had knowledge of her right to a pre-termination hearing through various documents governing her employment.**

During the 2011-2012 school year, Judge began her career with Shikellamy School District as Principal of Oaklyn Elementary School.[16]  In this role, Judge's direct supervisor was Patrick Kelley–Superintendent of Shikellamy School District.[17]  Directly pertinent to this action, Judge's responsibilities as principal included disciplining professional employees in her building, and overseeing the improvement plans of teachers within those bounds.[18]  Judge had, in fact, overseen the creation and administration of an improvement plan for a teacher under her purview,[19] and was aware that failure of a teacher to comply with the terms of a plan could make them subject to termination.[20]

---

[14]  Def.'s SUMF ¶ 5, at 2; Pl.'s Resp. ¶ 5, at 1.

[15]  Id.; Judge Dep. (ECF No. 25-3), Exhibit 17.

[16]  Am. Compl. (ECF No. 17) ¶ 9, at 3; Answer (ECF No. 18) ¶ 9, at 3.

[17]  Judge Dep. (ECF No. 25-3), at 45:4-11.

[18]  Def.'s SUMF ¶¶ 8–9, at 3; Pl.'s Resp. ¶¶ 8–9, at 2–3.

[19]  Judge Dep. (ECF No. 25-3), Exhibit 8.

[20]  Def.'s SUMF ¶ 9, at 3; Pl.'s Resp. ¶ 9, at 3.

While employed at Shikellamy School District, Judge's employment

governed by a "Professional Employee's Contract" entered into on October 11,

2011.[21]  This contract contains the following pertinent language:

> This contract is subject to the provisions of the "Public School Code of
> 1949" and the amendments thereto.
>
> AND IT IS FURTHER AGREED by the parties hereto that none of the
> provisions of this act may be waived, either orally or in writing, and that this
> contract shall continue in force year after year, . . . unless terminated by the
> Professional Employee by written resignation presented sixty (60) days
> before resignation becomes effective, or by the School Board by official
> written notice presented to the Professional Employee; provided, that the
> said notice shall designate the cause for the termination and shall state that
> an opportunity to be heard shall be granted if the Professional Employee
> within ten (10) days after receipt of the termination notice, presents a written
> request for such a hearing.[22]

Incorporated within this contract, therefore, is Section 1122(a) of the Public School

Code of 1949, codified at 24 P.S. § 11-1122(a).  This section, which lists causes

for termination of contract, states the following:

> The only valid causes for termination of a contract heretofore or hereafter
> entered into with a professional employe shall be immorality; incompetency;
> unsatisfactory teaching performance based on two (2) consecutive ratings of
> the employe's teaching performance that are to include classroom
> observations, not less than four (4) months apart, in which the employe's
> teaching performance is rated as unsatisfactory; intemperance; cruelty;
> persistent negligence in the performance of duties; wilful neglect of duties;
> physical or mental disability as documented by competent medical evidence,
> which after reasonable accommodation of such disability as required by law
> substantially interferes with the employe's ability to perform the essential

---

[21]  Def.'s SUMF ¶ 6, at 2; Pl.'s Resp. ¶ 6, at 1–2.

[22]  Def.'s SUMF ¶ 7, at 2–3; Pl.'s Resp. ¶ 7, at 2.

functions of his employment; advocation of or participating in un-American or subversive doctrines; conviction of a felony or acceptance of a guilty plea or nolo contendere therefor; persistent and wilful violation of or failure to comply with school laws of this Commonwealth, including official directives and established policy of the board of directors; on the part of the professional employe: Provided, That boards of school directors may terminate the service of any professional employe who has attained to the age of sixty-two except a professional employe who is a member of the old age and survivors insurance system pursuant to the provisions of the act, approved the first day of June, one thousand nine hundred fifty-six (Pamphlet Laws 1973).[23]

Furthermore, Judge's conduct as an administrative employee was governed by

"School Board Policy # 317," which states the following:

> All administrative employees are expected to conduct themselves in a manner consistent with appropriate and orderly behavior. Effective operation of district schools requires the cooperation of all employees working together and complying with a system of Board policies, administrative regulations, rules and procedures, applied fairly and consistently.
> The Board directs that all administrative employees shalt be informed of conduct that is required and is prohibited during work hours and the disciplinary actions that may be applied for violation of Board policies, administrative regulations, rules and procedures.[24]
>
> . . .
>
> When demotion or dismissal charges are filed against a certificated administrative employee, a hearing shall be provided as required by applicable law. Noncertificated administrative employees may be entitled to a Local Agency Law hearing, at the employee's request.
>
> When engaged in assigned duties, administrative employees shall not participate in activities that include but are not limited to the following:

---

[23] 24 P.S. § 11-1122.

[24] Def.'s SUMF ¶ 10, at 3; Pl.'s Resp. ¶ 10, at 3.

1. Physical or verbal abuse, or threat of harm, to anyone.

2. Causing intentional damage to district property, facilities or equipment.

3. Forceful or unauthorized entry to or occupation of district facilities, buildings and grounds.

4. Use, possession, distribution, or sale of alcohol, drugs or other illegal substances.

5. Use of profane or abusive language.

6. Failure to comply with directives of district officials, security officers, or law enforcement officers.

7. Carrying onto or possessing a weapon on school grounds without authorization from the appropriate school administrator.

8. Violation of Board policies, administrative regulations, rules or procedures.

9. Violation of federal, state, or applicable municipal laws or regulations.

10. Conduct that may obstruct, disrupt, or interfere with teaching, research, service, operations, administrative or disciplinary functions of the district, or any activity sponsored or approved by the Board.[25]

This policy, together with other Shikellamy School District Board Policies which are applicable to administrative employees, are accessible on the District's

---

[25] Judge Dep. (ECF No. 25-3), Exhibit 1.

website.[26]  Judge acknowledged reading these policies during her time as principal, and further kept a binder of said policies in her office.[27]

**C. On May 30, 2014, Judge was arrested for driving under the influence of alcohol.  Results of a blood alcohol test later confirmed a Blood Alcohol Content of .332—well in excess of Pennsylvania's legal limit of .08.**

On May 30, 2014 at approximately 11:30 p.m., during the time she was employed by Shikellamy School District as Principal, Judge was involved in a motor vehicle traffic stop.[28]  Initiated by Trooper Craig Magnuson of the Pennsylvania State Police in Selinsgrove, Pennsylvania as part of his assigned DUI detail,[29] this stop was made as Judge was leaving the Selinsgrove Hotel—a bar/restaurant.[30]  After she was pulled over, Judge admitted to Trooper Magnuson that she had consumed alcohol at this establishment prior to driving her vehicle.[31]  She also asked Trooper Magnuson to let her go,[32] and expressed to the officer

---

[26]  Id. at 37:3-37.

[27]  Id. at 37:3-23.

[28]  Def.'s SUMF ¶ 13, at 4; Pl.'s Resp. ¶ 13, at 3.

[29]  Def.'s SUMF ¶¶ 14–15, at 4; Pl.'s Resp. ¶¶ 14–15, at 3.  It should be noted that the parties disagree over the impetus for Trooper Magnuson pulling over Judge.  While Trooper Magnuson stated in his deposition that he pulled over Judge because she had driven in the opposite lane after pulling out from her parking space, Judge herself argues that she was initially told she was pulled over for failing to use a turn signal when pulling out. See Def.'s SUMF ¶ 16, at 4; Pl.'s SUMF ¶ 16, at 3.  Because this dispute is irrelevant to the instant constructive discharge analysis, however, the Court need examine it no further.

[30]  Def.'s SUMF ¶ 17, at 4; Pl.'s Resp. ¶ 17, at 4.

[31]  Def.'s SUMF ¶ 18, at 4; Pl.'s Resp. ¶ 21, at 4.

[32]  Def.'s SUMF ¶ 21, at 5; Pl.'s Resp. ¶ 18, at 4.

concern over the implications her impending arrest would have on her employment.[33] Judge was thereafter placed under arrest, handcuffed, and transported to the state police barracks for blood alcohol testing.[34] During the ride to the state police barracks, Judge was talking, angry, and yelling.[35] She understood that the results of the blood test later performed were determinative of whether she would face charges for this incident.[36]

Results of the blood alcohol test were returned to Trooper Magnuson on June 17, 2014, and indicated that, at the time of her arrest, Judge had a Blood Alcohol Content (BAC) of .332—well in excess of Pennsylvania's legal limit of .08.[37] In light of what Trooper Magnuson stated was the highest BAC he had encountered in his sixteen years as a state trooper, Judge was charged on June 19, 2014 with violating 75 Pa.C.S.A. § 3802(a), or DUI– general impairment, and 75 Pa.C.S.A. § 3802(c), or DUI–highest rate of alcohol.[38] She obtained a lawyer for the sole purpose of advising her how to handle her criminal charges,[39] and later entered a plea of guilty to one count of 75 Pa. C.S.A. §3802(a) – General

---

[33] Judge Dep. (ECF No. 25-3), at 49:2 -50:23.

[34] Def.'s SUMF ¶ 22, at 5; Pl.'s Resp. ¶ 23, at 4.

[35] Def.'s SUMF ¶ 23, at 5; Pl.'s Resp. ¶ 22, at 4.

[36] Def.'s SUMF ¶ 25, at 5; Pl.'s Resp. ¶ 25, at 4.

[37] Def.'s SUMF ¶¶ 27–28, 30, at 6; Pl.'s Resp. ¶¶ 27–28, 30, at 5.

[38] Def.'s SUMF ¶¶ 29, 31, at 6; Pl.'s Resp. ¶¶ 29, 31, at 5.

[39] Pl.'s SUMF ¶ 26, at 4.

Impairment Driving Under the Influence.[40]  Judge received a sentence of six

months of probation and a $ 300.00 fine.[41]  She did not reveal this incident to

anyone at the District prior to June 19, 2014.[42]

> **D.    Superintendent of Shikellamy School District Patrick Kelley
> questioned Judge on June 19, 2014 concerning this DUI arrest.
> He thereafter presented Judge with a letter asking for her
> resignation, or, in the alternative, advising her that she would face
> the filing of written charges of dismissal.  Judge chose the former
> alternative—she resigned.**

On June 19, 2014, nearly three weeks after Judge's initial arrest, she

attended a meeting in her office with Patrick Kelley—the Shikellamy School

District Superintendent ("Kelley"), and Abbey Walshaw Wertz—the Shikellamy

School District Director of Education.[43]  During this meeting, Kelley informed

Judge that he had learned from the district solicitor that she had been involved in a

traffic stop based on suspicion of driving under the influence.[44]  Judge, in turn

responded that she had been subject to a traffic stop, was not formally charged, and

was given a blood alcohol test at the state police barracks.[45]  At the time of this

meeting, Plaintiff had not received notice of formal charges.[46]

---

[40]  Dep. of Holly Judge (ECF No. 25-3), at 91:11-15.

[41]  Def.'s SUMF ¶ 59, at 10; Pl.'s Resp. ¶ 59, at 9.

[42]  Def.'s SUMF ¶¶ 29, 31, at 6; Pl.'s Resp. ¶¶ 29, 31, at 5.

[43]  Def.'s SUMF ¶¶ 33–34, at 6; Pl.'s Resp. ¶¶ 33–34, at 5.

[44]  Def.'s SUMF ¶¶ 35–36, at 7; Pl.'s Resp. ¶¶ 35–36, at 5.

[45]  Def.'s SUMF ¶ 37, at 7; Pl.'s Resp. ¶ 37, at 5–6.

[46]  Pl.'s Resp. ¶ 37, at 5–6.

At a meeting held approximately three hours later in his office, Kelley

handed Judge a letter which read, in pertinent part:

> First, I met with you after learning from two reliable sources that you were involved in a traffic stop based upon suspicion of driving under the influence. You stated at our meeting that you did not receive a field sobriety test. However, later in the meeting, you eventually disclosed that a blood alcohol test through blood testing was conducted at the State Police barracks.
>
> Secondly, you failed to disclose these significant events to me for a period of twenty (20) days and any disclosure required our personal meeting and demand for information. When confronted at the time of our meeting, you attempted to explain that no charges had been filed and in essence, you were released on your own recognizance, as if it was nothing more than a routine traffic stop. You stated testing did not occur because you were not given a field sobriety test.
>
> Thirdly, these underlying facts leave me with no choice but to ask for your immediate resignation. If you do choose to resign then I will offer a neutral reference in the future upon inquiry.
>
> Fourth, in the alternative, if you decide not to resign and DUI charges are filed against you then I will be forced to issue a written statement of charges for dismissal. These charges will be based upon the following elements:
>
> > * Immorality - conduct which offends the morals of the Commonwealth and is a bad example to the youth whose ideals a professional educator or charter school staff member has a duty to foster and elevate.
> >
> > * Intemperance - a loss of self-control or self-restraint, which may result from excessive conduct.
> >
> > * Moral Turpitude - (2) conduct done knowingly contrary to justice, honesty or good morals.[47]

---

[47] Judge Dep. (ECF No. 25-3), Exhibit 2.

Kelley had prepared this letter in consultation with Shikellamy School District's then solicitor—Michael Apfelbaum.[48]  Kelley also represented to Judge that, if she voluntarily resigned, he would provide a neutral statement of reference upon request.[49]

Judge was given until 12:30 p.m. the following day to respond to this letter.[50]  In the time following her second meeting with Kelley, Judge spoke only with her mother about the situation and her options.[51]  The following day, June 20, 2014, Judge submitted a letter resigning her position with the Shikellamy School District.[52]

## III.  LAW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[53]  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[54]

---

[48]  Def.'s SUMF ¶ 46, at 8; Pl.'s Resp. ¶ 46, at 7.

[49]  Def.'s SUMF ¶ 49, at 8; Pl.'s Resp. ¶ 49, at 7.

[50]  Judge Dep. (ECF No. 25-3), at 80:14-24; Judge Dep., Exhibit 2.

[51]  Def.'s SUMF ¶ 51, at 9; Pl.'s Resp. ¶ 51, at 8.

[52]  Judge Dep. (ECF No. 25-3), at 74:25-75:5; Judge Dep., Exhibit 3.

[53]  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

[54]  Fed. R. Civ. P. 56(a).

"Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[55]

"A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[56] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[57]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[58] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[59] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury

---

[55] Clark v. Modern Grp. Ltd., 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) and Celotex Corp., 477 U.S. at 322).

[56] Clark, 9 F.3d at 326.

[57] Id.

[58] Liberty Lobby, Inc., 477 U.S. at 252.

[59] Id.

could reasonably find for the plaintiff."[60]  "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[61]  Summary judgment therefore is "where the rubber meets the road" for a plaintiff, as the evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[62]  "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[63]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that

---

[60] Id.

[61] Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson, 81 U.S. 442, 447 (1871)).

[62] Celotex Corp., 477 U.S. at 323 (internal quotations omitted).

[63] Id.

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[64]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[65]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[66]  Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[67]  On motion for summary judgment, "[t]he court need consider only the cited materials, but it may consider other materials in the record."[68]

---

[64]  Liberty Lobby, Inc., 477 U.S. at 250.

[65]  Fed. R. Civ. P. 56(c)(1).

[66]  Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

[67]  Fed. R. Civ. P. 56(e)(2).

[68]  Fed. R. Civ. P. 56(c)(3).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[69] "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[70] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[71]

## IV. ANALYSIS

In its Motion for Summary Judgment, Shikellamy School District seeks the imposition of final judgment in its favor on Judge's Section 1983 claim and her breach of contract claim. Having determined that there is no genuine dispute of material fact from which a reasonable jury could find in favor of Judge, I will grant the Motion. My reasoning is as follows.

### A. Judge's Fourteenth Amendment Procedural Due Process Claim

Section 1983 of Title 42 of the United States Code provides a cause of action to redress violations of federal law committed by state officials.[72] Section 1983 is not a source of substantive rights; rather, it merely provides a remedy for

---

[69] Liberty Lobby, Inc., 477 U.S. at 249.

[70] Id.

[71] Id. at 249–50 (internal citations omitted).

[72] See 42 U.S.C. § 1983.

violations of constitutional rights.[73]  To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the complainant of rights secured under the Constitution or federal law.[74]  Here, Judge alleges that Shikellamy School District violated her Fourteenth Amendment right to procedural due process by failing to provide both a pre-termination opportunity to respond, and post termination administrative procedures.

The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."[75]  "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law."[76]  The parties do not dispute that, as a public employee, Judge had a property interest in her continued employment.  Property interests are not created by the Constitution, but rather "by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to

---

[73]  See City of Oklahoma City v. Tuttle, 471 U.S. 808, 815 (1985).

[74]  See Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998).

[75]  U.S. Const. amend. XIV, § 1.

[76]  Burns v. PA Dep't. of Correction, 544 F.3d 279, 285 (3d Cir. 2008) (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)).

those benefits."[77]  Judge's property interest is memorialized in two provisions of Pennsylvania's Public School Code of 1949, located at 24 P.S. § 11-1122 ("Section 11-1122") and 24 P.S. § 5-514 ("Section 5-514").

The operative issue which remains is whether Judge was constructively terminated and thus deprived of procedural due process prior to deprivation of that property interest, or, instead, voluntarily resigned and relinquished that property interest.  Shikellamy School District characterizes Judge's exit from her position as a voluntary resignation; Judge, on the other hand, portrays her departure as one in which she was forced to resign and did so under protest, in a manner effectively amounting to a constructive discharge.[78]

At the outset, I note that employee resignations carry a presumption of voluntariness which "remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured."[79]  Even if

---

[77]  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

[78]  Not addressed in the parties' briefing but referenced throughout deposition testimony is the "Notice of Determination" completed by the Department of Labor and Industry Office of Unemployment Compensation Benefits which found Judge eligible for unemployment benefits. The findings of fact contained therein, however, have no preclusive effect in the instant determination. See Mathis v. Christian Heating and Air Conditioning, Inc., 91 F.Supp.3d 651, 657 (E.D.Pa. 2015) (citing 43 P.S. § 829; Training Associates Corp. v. Unemployment Comp. Bd. of Review, 101 A.3d 1225, 1234 (Pa.Commw.Ct. 2014)).

[79]  Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999).

prompted to retire by some action of her employer, this presumption remains intact so long as the employee resigns of her own free will.[80]

The United States Court of Appeals for the Third Circuit has further articulated that there are two particular circumstances in which an employee's resignation will be considered involuntary, that is: "(1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee."[81]  In making this determination, a court must "examine the surrounding circumstances to test the ability of the employee to exercise free choice."[82]

### (1) No Reasonable Jury Could Find that Judge's Resignation Was Obtained Through the Misrepresentation of a Material Fact.

Here, Judge has advanced no argument that her resignation was attained through deception or misrepresentation of a material fact and there exists no evidence within the factual record from which a reasonable jury could make that finding.  In fact, review of the letter submitted to Judge on June 19, 2014, reveals that it accurately relayed the choices available to Judge.  Specifically, as previously noted, this letter stated that:

---

[80] Id.

[81] Id. at 228.

[82] Id. at 227.

Thirdly, these underlying facts leave me with no choice but to ask for your immediate resignation. If you do choose to resign then I will offer a neutral reference in the future upon inquiry.

Fourth, in the alternative, if you decide not to resign and DUI charges are filed against you then I will be forced to issue a written statement of charges for dismissal.[83]

This statement encapsulates the necessary procedure to be followed prior to depriving Judge of her property right in continued employment. While Judge argues that Kelley never informed her of her right to a hearing prior to termination,[84] she offers no evidence that Kelley affirmatively misrepresented her alternatives in a way which differed from the letter.

Rather, as outlined in her deposition and noted throughout this opinion, it was Judge's own mistaken understanding of the letter which led her to believe she would face immediate termination **without a hearing**. That mistaken understanding is shown in the following exchanges within Judge's deposition:

Q. What did you say?

A. I looked at him. I said, what do I do now? I don't know what to do. I mean, is there anything I could do to change this or --- I didn't know where to go. And he just simply told me no.[85]

. . .

---

[83] Judge Dep. (ECF No. 25-3), Exhibit 2.

[84] See Pl.'s SUMF ¶¶ 43–45, 47, at 6–7.

[85] Judge Dep. (ECF No. 25-3), at 63:18-24.

Q. What did you understand this to mean then, issue a written statement of charges for dismissal?

A. That I was going to be terminated. [86]

. . .

Q. And I understand that. And I appreciate that. But I mean, knowing that this policy is out there, although you think it doesn't apply under the circumstances, when Mr. Kelley presented this letter to you, in your own mind, you didn't think you'd have a right to a hearing before termination?

A. I had asked Mr. Kelley, what can I do? Is there anything I could do? I said, what do I ---? And he told me, no. So to me, I was asking, what could I do? Is there anything I could do? And he told me no.

Q. Did you specifically ask Mr. Kelley, well, if I don't want to resign and you issue a written statement of charges for dismissal, would I have a right to a hearing before the ---?

 A. No, I did not.

Q. Did it ever cross your mind when you had this discussion with Mr. Kelley, that you would have a right to a hearing?

A. No . . . [87]

. . .

Q. Does the letter say that if you do not resign you will be fired?

A. No. it states that if you choose not to resign, forced to issue a written statement of charges for dismissal.

Q. Well, ---.

---

[86] Id. at 67:1-5.

[87] Id. at 68:1-69:2.

A. So to me, that is telling me that --- charges for dismissal, I'm going to be terminated. Just like this is a letter that's telling me, here's your opportunity to resign. If you don't resign, you will be terminated.[88]

Furthermore, even if the above exchange were construed to show an affirmative misrepresentation by Kelley, Judge's claim for constructive discharge based on material misrepresentation would still fail as a matter of law. The Third Circuit has held that, in order for the misrepresentation of a material fact to rebut the presumption of voluntary resignation, it is incumbent upon the plaintiff to show that a "reasonable person would have been misled by the agency's statements."[89] Therefore, neither the "subjective perceptions of the employee [n]or the subjective intentions of the employer" are determinative.[90]

In Leheny v. City of Pittsburgh, the Third Circuit found that the district court erred in failing to dismiss a procedural due process claim which was based on allegations by police officers that a letter from the city's disability claims management service contained a misrepresentation of material fact.[91] The police officers argued that, because of a material misrepresentation within the letter, they were led to believe that they would lose their Heart and Lung Act benefits, their pension benefits, and any available worker's compensation benefits if they did not

---

[88] Id. at 71:18-72:6.

[89] Boyd v. Rockwood Area School Dist., 105 F.App'x. 382, 385 (3d Cir. 2004).

[90] Id.

[91] Leheny, 183 F.3d at 228.

sign a supplemental agreement acknowledging their permanent disability.[92]

Addressing this argument, the <u>Leheny</u> Court held that

> [a]lthough it is possible that Ryan's letter may have confused Leheny and Ramsey concerning the applicable procedures for terminating Heart and Lung Act benefits, **no part of the letter would lead a reasonable police officer** to believe that refusal to sign the supplemental agreements would result in termination of *all* benefits.[93]

Here, as in <u>Leheny</u>, no part of the letter nor the accompanying discourse as relayed by Judge above would lead a reasonable educator and administrator of Judge's considerable education and experience to believe that she did not have the legal right to a pre-termination hearing. Therefore, to the extent Judge's argument for a finding of constructive discharge is premised on a misrepresentation of a material fact,[94] Shikellamy School District is entitled to summary judgment because she has failed to rebut the presumption of voluntary resignation.

### (2) <u>No Reasonable Jury Could Find that Judge's Resignation Was Obtained Through Coercion or Duress.</u>

In the absence of evidence from which a reasonable jury could find a misrepresentation of fact, success of Judge's claim for constructive discharge is therefore dependent on a theory that Shikellamy School District forced her resignation through coercion or duress. To determine whether a resignation was

---

[92] <u>Id.</u>

[93] <u>Id.</u> (emphasis added).

[94] I again note that Judge's briefing makes no argument to that end.

involuntarily coerced, a court must consider whether the "[p]laintiff reasonably believed that he 'had no other choice but to quit.' "[95]  Again, the ultimate inquiry is an objective one and a subjective belief by the employee that her only option is to resign is irrelevant.[96]  Similarly irrelevant to the inquiry is the mere fact that plaintiff is faced with unpleasant alternatives, as the existence of such alternatives still affords plaintiff a choice.[97]

Courts have considered several non-dispositive factors when determining whether a resignation was procured involuntarily due to coercion or duress, including: (1) whether the employee was presented with an alternative to resignation; (2) whether the employee understood the nature of the choices she was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the employee had the advice of counsel.[98]  Analysis of these factors in the instant case reveals that Judge has failed to rebut the presumption of voluntary resignation by raising a genuine issue of material fact as to whether her resignation was the product of coercion or duress.

---

[95] Kosciolek v. Wilkes-Barre Fire Fighters Ass'n Local 104, Civil Action No. 3:04-CV-1920, 2006 WL 3742700, at *4 (M.D.Pa. Dec. 18, 2006)(Caputo, J.)(quoting Lighton v. Univ. of Utah, 209 F.3d 1213, 1222 (10th Cir. 2000)).

[96] Id. (citing Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 173 (4th Cir.1988)).

[97] Id. (citing Stone, 855 F.2d at 174; Christie v. United States, 518 F.2d 584, 587–88 (Ct.Cl. 1975)).

[98] See O'Connell v. County of Northampton, 79 F.Supp.2d 529, 533 (E.D.Pa. 1999) (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995)).

(a) O'Connell Factor 1: Whether the Employee Was Presented With An Alternative to Resignation

First, while Judge argues that she faced no alternative to resignation following Kelley's presentation of the letter, an objective analysis of the totality of circumstances surrounding Judge's resignation reveals that she was presented with a valid alternative to immediate resignation—the filing of a written statement of charges for dismissal.

In Corr v. Springdale Borough,[99] the United States District Court for the Western District of Pennsylvania granted summary judgment in favor of defendant borough and related officials on a Fourteenth Amendment procedural due process premised on constructive discharge.   In that case, plaintiff James M. Corr, a part-time police officer, was suspected of stealing and consuming prescription pills.[100] After learning of these accusations, the borough chief of police and mayor threatened to bring criminal charges against Corr if he did not resign.[101]  Corr thereafter resigned from his position rather than face potential criminal charges.[102] Based on this factual pattern, Corr brought a Fourteenth Amendment procedural due process claim premised on what he alleged was a constructive discharge.[103]

---

[99] --F.Supp.3d--, No. 15-CV-00637, 2016 WL 6901327, at *2–3.

[100] Id. at *1.

[101] Id.

[102] Id.

[103] Id. at *2.

The Honorable Mark Hornak granted summary judgment on this alleged violation of Corr's right to procedural due process. Judge Hornak reasoned that, although plaintiff contended that his resignation was involuntary since it was offered under the unquestionably unpleasant threat of criminal charges, an alternative to immediate resignation nevertheless existed in the form of remaining in his position and facing the filing of said charges.[104]

In the instant matter, the facts when read in the light most favorable to Judge demonstrate that she was presented with an alternative less severe than that faced by the plaintiff in <u>Corr</u>. Specifically, as noted throughout, the letter presented to Judge on June 19, 2014 stated that in the absence of her resignation, Kelley would be forced to "issue a written statement of charges for dismissal."[105] At that moment, Judge could therefore remain in the employ of Shikellamy School District and face the filing of a written statement of charges with the School Board. While unpleasant, this choice, as memorialized in the letter, nonetheless presented an alternative.

### (b) O'Connell Factor 2: Whether the Employee Understood the Nature of the Choices She Was Given

Having determined that the evidence shows Judge was presented an alternative to her immediate resignation, the second O'Connell factor requires the

---

[104] <u>Id.</u> at *3 (citing, <u>inter alia</u>, <u>Hargray v. City of Hallandale</u>, 57 F.3d 1560, 1568 (11th Cir. 1995)).

[105] Judge Dep. (ECF No. 25-3), Exhibit 2.

Court to address if a genuine dispute of material fact exists regarding whether Judge understood the nature of the choices given and as previously outlined.

In her Brief in Opposition of the instant Motion for Summary Judgment, Judge argues that she did not understand the nature of the choices given, i.e. that she had the opportunity to "stand pat and fight"[106] at a properly held pre-termination hearing.[107]  Defendant Shikellamy School District, in turn, argues that, because of Judge's experience as an administrator and her sixteen years as an educator, a reasonable employee in plaintiff's position would certainly understand she had a choice beyond resignation or immediate termination, i.e. the right to a written statement of charges and hearing.[108]

At the outset, I note that, while the summary judgment standard dictates that I view the facts presented in this light most favorable to Judge, her subjective perception concerning the unfairness or harshness of the circumstances, or in this case—lack of alternatives, leading up to her resignation is not by itself dispositive.[109]  Instead, the utilization of an objective test by the Third Circuit mandates that the inquiry continue.[110]  Therefore, "where a separated employee alleges that his resignation was coerced, he must show that the resignation resulted

---

[106] Christie, 518 F.2d at 587.

[107] Pl's Opp. Br., at 6.

[108] Def.'s Supp. Br., at 8.

[109] Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993).

[110] Mandel v. M&Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013).

from employment conditions which, under an objective standard, are so unpleasant or so difficult that a **reasonable employee in plaintiff's position would resign**."[111]

Here, while Judge argues that a genuine dispute exists in that she herself was unaware and uninformed that she had the option of facing both the formal filing of charges and a subsequently held hearing before the school board,[112] the facts demonstrate that no reasonable jury could find that a reasonable employee with Judge's credentials and position would not understand that she had an alternative to immediate resignation. First, the undisputed facts establish that Judge enjoyed a lengthy career as an educator and school district administrator prior to her resignation on June 19, 2014. Specifically, following her graduation from King's College in 2000, Judge worked for fourteen years in various teaching and administrative positions.[113] Those positions, as noted, include working as:

- an Education Specialist for Early Intervention Program at John Heinz Institute/Hazleton Area School District from 2000 through 2003;

- an Autistic Support Teacher from 2003 through 2004;

_____

[111] Stiner v. University of Delaware, Civil Action No. 02-CV-312, 2004 WL 1949545, at *6 (D.Del. Aug. 27, 2004)(citing Leheny, 183 F.3d at 228)(emphasis added).

[112] Judge Dep. (ECF No. 25-3), at 66:19 – 68:15.

[113] See generally Judge Dep. (ECF No. 25-3), Exhibit 17.

- a Reading Specialist for Northeast Educational Intermediate Unit # 19 from 2004 through 2006;

- Reading Specialist at Lake Lehman School District from 2006 through 2008;

- an Assistant Principal and Athletic Director at Susquehanna Community School District from 2008 through 2011; and finally

- an Elementary School Principal at Shikellamy School District from 2011 through 2014.[114]

Second, in her position as Elementary School Principal for Shikellamy School District at Oaklyn Elementary, Judge was tasked with, among other things, teacher evaluations and discipline.[115] In that role, Judge was familiar with the progression of disciplinary action to be taken against teachers; beginning with an informal conversation, progressing to a letter of reprimand and meeting with a union official, and ultimately culminating in a grievance process whereby teachers had the right to an arbitration hearing.[116] Judge, in fact, had overseen the creation and administration of an improvement plan for a teacher under her purview.[117] She

---

[114] Id.

[115] Judge Dep. (ECF No. 25-3), at 32:7 – 33:1.

[116] Id. at 34:10 – 36:15.

[117] Judge Dep. (ECF No. 25-3), Exhibit 8.

understood that failure to abide by the terms of the improvement plan would render the teacher subject to termination.[118]

The undisputed facts also indicate that Judge had, through numerous sources, been informed of the due process to which administrators were entitled prior to termination. First, as a preliminary matter, Judge admitted that, in her position as Elementary Principal at Oaklyn Elementary, she was an Act 93 employee[119] and considered as such by Shikellamy School District.[120] In her position as an Act 93 administrator, Judge's continued employment was subject to a Professional Employee's Contract.[121] This contract contained the following pertinent language:

> This contract is subject to the provisions of the "Public School Code of 1949" and the amendments thereto.
>
> AND IT IS FURTHER AGREED by the parties hereto that none of the provisions of this act may be waived, either orally or in writing, and that this contract shall continue in force year after year, . . . unless terminated by the Professional Employee by written resignation presented sixty (60) days before resignation becomes effective, or by the School Board by official written notice presented to the

---

[118] Judge Dep. (ECF No. 25-3), at 108:13-15 ("And if you get two unsatisfactories within a school year, ultimately, you could be terminated.").

[119] Houston v. Easton Area School Dist., 355 F.App'x 651, 653 (3d Cir. 2009) ("Act 93, 24 P.S. § 11-1164, part of the Pennsylvania Public School Code of 1949, requires school employers to adopt written compensation plans for certain school administrators whose positions are not included in a bargaining unit. (Citation omitted). Act 93 explicitly excludes superintendents, business managers, and personnel directors from covered school administrators." (citation omitted)).

[120] Id. at 29:6-18.

[121] Judge Dep. (ECF No. 25-3), Exhibit 13.

Professional Employee; provided, that the said notice shall designate the cause for the termination and shall state that **an opportunity to be heard shall be granted if the Professional Employee within ten (10) days after receipt of the termination notice, presents a written request for such a hearing**.[122]

This contract was signed by Judge on October 11, 2011, and remained operative through annual salary, compensation, and benefits amendments at the time of her termination.[123]

It is also undisputed that, as Principal for Oaklyn Elementary School, Judge was acquainted with and understood "School Board Policy # 317" which pertains to Conduct/Disciplinary Procedures for Administrative Employees.[124] This policy stated as follows:

All administrative employees are expected to conduct themselves In a manner consistent with appropriate and orderly behavior. Effective operation of district schools requires the cooperation of all employees working together and complying with a system of Board policies, administrative regulations, rules and procedures, applied fairly and consistently.

The Board directs that all administrative employees shalt be informed of conduct that is required and is prohibited during work hours and the disciplinary actions that may be applied for violation of Board policies, administrative regulations, rules and procedures.

**When demotion or dismissal charges are filed against a certificated administrative employee, a hearing shall be provided as required by applicable law**.[125]

[122] Def.'s SUMF ¶ 7, at 2–3; Pl.'s Resp. ¶ 7, at 2 (emphasis added).

[123] Judge Dep. (ECF No. 25-3), at 187:22–188:18.

[124] Id. at 38:13-39:3.

[125] Judge Dep. (ECF No. 25-3), Exhibit 1.

Judge readily admits that she was a "certificated administrative employee" within the ambit of the policy, and that she was familiar with this policy as an elementary principal.[126]

Despite this admission, Judge disputes whether this policy governed out-of-work acts such as the arrest for her DUI. Her belief concerning the applicability of this policy is best explained by the following exchange:

> Q. You knew this policy existed. Would you agree that this policy applied to you, as an administrative employee of the School District, with an administrator two certification?
>
> A. To a certain extent.
>
> Q. What do you mean by that?
>
> A. For being here today, I do not believe this applies, because if you read further in it, this is talking about employees while they're performing their job functions and on duty, so ---.
>
> . . .
>
> Q. If the superintendent, or director of education, or some other administrator that had some kind of supervisory role over you, told you we intend to present charges to the School Board against you, and are seeking the termination of your employment, do you think you'd be entitled to a hearing, based upon what this policy says?
>
> A. If it was charges because of something I did during school time, yes.
>
> Q. But if it was based upon conduct that happened not during school hours, you think this policy would not apply to you?

---

[126] Id. at 39:4-40:3.

A. Correct.[127]

This admission by Judge is damning.  As noted throughout, "[r]esignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because "the fact remains that plaintiff *had a choice*. [Plaintiff] could stand pat and fight."[128]  Here, the testimony above indicates that Judge knew of her right to a hearing prior to termination.  She instead disputes the applicability of "School Board Policy # 317" and ultimately whether her DUI arrest could serve as a valid basis for her termination.  This argument does not create a triable dispute of material fact.[129]

Resolution of the underlying grounds for termination does not preclude the entrance of summary judgment so long as the employer has **good cause to believe** that there are in fact grounds for termination.[130]  In the instant matter, Kelley had good cause to believe there were grounds for Judge's termination.  The letter which he gave to Judge on June 19, 2014 stated those grounds as follows:

> Fourth, in the alternative, if you decide not to resign and DUI charges are filed against you then I will be forced to issue a written statement of charges for dismissal. These charges will be based upon the following elements:

---

[127]  Id. at 40:4-16; 41:3-20.

[128]  Hargray, 57 F.3d at 1568 (quoting Christie, 518 F.2d at 587)(emphasis in original).

[129]  It is important to note that, while Plaintiff now avers that she did not believe School Board Policy 317 applied to her DUI arrest, she admitted expressing concern about her continued employment to Trooper Magnuson on the night of her arrest and asked that she be let go. Judge Dep. (ECF No. 25-3), at 49:2–50:23.

[130]  Stone, 855 F.2d at 174.

* Immorality - conduct which offends the morals of the Commonwealth and is a bad example to the youth whose ideals a professional educator or charter school staff member has a duty to foster and elevate.

* Intemperance - a loss of self-control or self-restraint, which may result from excessive conduct.

* Moral Turpitude - (2) conduct done knowingly contrary to justice, honesty or good morals.[131]

The parties argue in extenso within their papers whether Shikellamy School District ultimately had a valid basis to terminate Judge, and whether the Commonwealth Court of Pennsylvania case of Zelno v. Lincoln Intermediate Unit No. 12 Bd. of Dirs.[132] fully provides that basis. This inquiry, however, is a step too far for purposes of the instant analysis. As previously explained, the inquiry at this stage is not whether a valid basis existed, but rather whether there was **good cause to believe** it existed.

Shikellamy School District argues that such cause existed based on Judge's DUI arrest and her subsequent charges for the highest rate of impairment under the Pennsylvania Vehicle Code.[133] Conduct constituting "immorality" is cause for termination of a tenured professional employee under Section 1122 of the School

---

[131] Judge Dep. (ECF No. 25-3), Exhibit 2.

[132] 786 A.2d 1022 (Pa. Commw. Ct. 2001).

[133] Def.'s Br., at 12–14.

Code.[134]  Immorality has been defined by the courts as "a course of conduct as

offends the morals of the community and is a bad example to the youth whose

ideals a teacher is supposed to foster and elevate."[135]  In Zelno, the Commonwealth

Court of Pennsylvania upheld the termination of a teacher who had been convicted

of her third DUI on grounds that the conviction demonstrated a course of conduct

which supported a finding of immorality.[136]  While Judge is correct that this case

does speak to her exact circumstance as the recipient of one DUI, the Zelno court

goes on to state that, while drinking and driving is not per se immoral, "certain

circumstances . . . involving drinking and driving may constitute conduct that is

immoral under the School Code."[137]

　　　Given Judge's arrest for what Trooper Magnuson had referred highest BAC

he had encountered in his sixteen years as a state trooper[138] and her subsequent

charge with DUI: High Rate of Alcohol—or 75 Pa.C.S.A. § 3802(b), the Board

may have found that there existed "certain circumstances" making Judge's DUI

arrest immoral.  Therefore, **good cause to believe** that there were valid grounds for

termination based on immorality existed in the instant case.  Judge's argument

---

[134]  24 P.S. § 11–1122.

[135]  Horosko v. Mt. Pleasant Township School District, 6 A.2d 866 (Pa. 1939); Dohanic v. Commonwealth of Pennsylvania, Dept. of Education, 533 A.2d 812 (Pa. 1987).

[136]  Zelno, 786 A.2d at 1026.

[137]  Id. at 1026 n. 7.

[138]  Magnuson Dep. (ECF No. 25-5), at 28:21-22.

concerning the ultimate absence of such grounds was more properly preserved for presentation at a pre-termination hearing.  To the extent she received an unfavorable finding at that hearing and was terminated, she was entitled to appeal that decision through the proper channels.[139]  By resigning prior to this hearing, she forfeited that opportunity to litigate this issue.

### (c) O'Connell Factor 3: Whether the Employee Had a Reasonable Time to Choose

Judge also argues that she was coerced into involuntary resignation because, after being presented with a letter from Kelley on June 19, 2014, she was granted only until 12:30 p.m. the following day to decide.[140]  This deadline is confirmed by the text of the June 19, 2014 letter, which stated:

> This letter is delivered on Thursday, June 19, 2014 and I await your answer on, or before, 12:30 pm. on June 20, 2014.[141]

The totality of circumstances surrounding her resignation, however, demonstrates a much longer window of deliberation than Judge cares to appreciate.  In her

---

[139]  In case the professional employe concerned considers himself or herself aggrieved by the action of the board of school directors, an appeal by petition, setting forth the grounds for such appeal, may be taken to the Superintendent of Public Instruction at Harrisburg. Such appeal shall be filed within thirty (30) days after receipt by registered mail of the written notice of the decision of the board. A copy of such appeal shall be served by registered mail on the secretary of the school board.

24 P.S. § 11-131. See, e.g., Jackson v. Shikellamy School Dist., Civil Action No. 2267-CD-2015, 2016 WL 6080862, at *2 (Pa.Commw.Ct. Oct. 18, 2016)(showing the channels of appeal for a school board's determination of valid basis for termination).

[140]  Pl.'s Br. at 7.

[141]  Judge Dep. (ECF No. 25-3), Exhibit 7.

deposition, Judge admitted to recognizing the possible negative implications of the DUI arrest on her continued employment as early as the night of the arrest, or May 30, 2014.  This recognition is memorialized in the following testimony wherein Judge recounts asking Trooper Magnuson to "let her go" and admits that she relayed to him concerns about her job:

> Q. At any point during the stop, did you ask the police officer to let you go?
>
> A. Well, yes.
>
> Q. Tell me what you remember saying to him in that regard.
>
> A.
>
>  . . .
>
> And in the course of that, I believe I had said something along the lines, like, oh my god, I can't believe--- I was just upset. So I can't give you my exact wording, but I --- yes, I did say at one point to please, you know, let me go.
>
> Q. Did you express to the officer that you were concerned about your job?
>
> A. Yes.[142]

In Coreia v. Schuylkill County Area Vocational-Technical School Authority,[143] plaintiff argued that he was constructively discharged through coercion because, among other things, he was only afforded three and one half hours in which to decide whether to resign or face termination.  Finding as a matter

---

[142] Judge Dep. (ECF No. 25-3), at 49:2–50:23.

[143] Civil Action No. 04-CV-2425, 2006 WL 1310879 (M.D.Pa. May 11, 2006)

of law that plaintiff voluntarily resigned his teaching position, the Honorable John E. Jones III of this Court found that the time period was greater than that alleged because plaintiff "was in a position to view the gathering storm and focus on this admittedly Hobson's choice at least several days prior to August 20, 2003."[144] Judge Jones further found that "[p]laintiff could have rescinded his letter of resignation up until the time the I.U. Board accepted it."[145]

In the instant matter, it is clear from the above testimony that Judge understood as early as May 30, 2014 that her DUI arrest and the likely-to-be-filed charges for same would put her continued employment in jeopardy. Despite this recognition more than two weeks prior to Kelley's presentation of the June 19, 2014 letter, Judge now argues that she did not have reasonable time to choose between immediate resignation and remaining in her position to fight her termination before the school board. I find that this argument alleging an inadequate time to choose between alternatives is disingenuous, and that Judge in fact had even more time than the plaintiff in Coreia to foresee the "gathering storm" resulting from her DUI arrest and prepare accordingly.[146]

---

[144] Id. at *9.

[145] Id.

[146] Cf. Caruso v. Superior Court of Delaware, Civil Action No. 12-CV-277, 2013 WL 1558023, at *10 (D.Del. Apr. 12, 2013) (finding that plaintiff had alleged facts plausibly suggesting that she did not have a reasonable amount of time where she alleged that she had no knowledge that her employment was in jeopardy prior to a meeting in which she was confronted with a "take-it-or-leave-it" resignation proposition).

Moreover, even assuming <u>arguendo</u> that Judge was granted only a day of deliberation, this shortened time frame would not change this determination. In <u>Paroczay v. Hodges</u>,[147] the United States Court of Appeals for the District of Columbia overturned the grant of summary judgment in favor of a defendant and found that the plaintiff's affidavit of the events leading to his separation created a genuine issue of material fact as to the voluntariness of his resignation.[148] This affidavit stated that plaintiff had an interview with a personnel officer of the Department of Commerce on the day before his resignation in which the officer told the plaintiff that "he had derogatory information [regarding plaintiff] and that he should resign."[149] In another interview with the officer the following day, the officer further stated: "[i]f you do not resign now, I will press charges immediately. As soon as I go into the front office, I will start proceedings."[150] The officer also allegedly denied a request for more time, stating "[n]o, once you leave this office, I will start proceedings right now. Sign [the resignation] now."[151] The Court in <u>Paroczay</u> found that:

> [F]or on the 16th, while [plaintiff] was given the alternative of resigning or facing charges, there was then no suggestion of necessity for an immediate decision. On the 17th for the first time plaintiff, according to his affidavit,

---

[147] 297 F.2d 439 (D.C.Cir. 1961).

[148] <u>Id.</u> at 440–41.

[149] <u>Id.</u> at 440

[150] <u>Id.</u>

[151] <u>Id.</u> at 441.

was pressed into an immediate decision at the interview; he was then faced for the first time with being charged with serious misconduct unless he resigned then and there. The affidavit that this occurred raised an issue as to the voluntariness of the resignation.[152]

At the very least, Judge had overnight to decide whether to voluntary resign or face the imposition of charges for dismissal. Even when viewed in the light most favorable to her, this time pressure does not reach the level presented in Paroczay and thus is not sufficient to nudge this factor in favor of finding that the presumption of voluntary resignation has been overcome.

Other more recent court decisions have also imposed a more exacting "reasonable time" standard than that presented here when finding that the presumption of involuntariness has been overcome. For example, in Parrish v. City of Wilmington, the District Court for Southern District of Ohio found that a plaintiff stated a plausible claim to relief where he alleged facts indicating that he was told he needed to render an answer concerning his resignation at that evening's Park Board meeting.[153]

Similarly, in Rhoads v. Board of Educ. of Mad River Local School Dist.,[154] the United States Court of Appeals for the Sixth Circuit upheld the entry of summary judgment in favor of the defendant school district where they had granted

---

[152] Id. at 441.

[153] 3 F.Supp.3d 688, 694 (S.D. Ohio Feb. 28, 2014).

[154] 103 F. App'x. 888 (6th Cir. 2004).

the plaintiff between 10:00 a.m. and 5:00 p.m. on the same day to decide whether to resign.[155]  Finally, in Dodd v. Sheppard, the United States District Court for the District of Rhode Island found that a plaintiff was afforded reasonable time to choose where he was offered the choice to resign at a 4:00 p.m. meeting and thereafter rendered a typed letter of resignation later that evening.[156]  The Sheppard Court also found persuasive the fact that no evidence existed showing that plaintiff requested more time to make a decision.[157]

Given the persuasive examples noted above, I find that Judge had reasonable time to choose between the alternatives presented and that this factor therefore weighs against rebutting the presumption of voluntariness.  First, consideration of the factual record as a whole indicates that Judge first recognized the possible effect of a DUI on the night of her arrest, and thereafter had more than two weeks to foresee the "gathering storm."  Second, even if Judge had only overnight to decide between the alternatives presented, other courts have found this time pressure insufficient to rebut the presumption of voluntariness.  Third, as in Sheppard, there exists no evidence showing that Judge requested more time to make her decision.

---

[155]  Id. at 895.

[156]  436 F.Supp.2d 236, 336, 339 (D.R.I. 2006).

[157]  Id.

The final two O'Connell factors appear at first blush to favor Judge; however, closer examination reveals they do little to further her cause. First, the undisputed facts indicate that Judge was not afforded the opportunity to choose the date of her resignation. This factor alone, however, has not been found dispositive by other courts in rebutting the presumption of voluntariness. In <u>Sheppard</u>, for example, the District of Rhode Island found that, although this factor appears to weigh in plaintiff's favor, standing alone it is not enough to "tilt the scale in the direction of a finding of coercion or duress."[158]

Second, while Judge argues that she did have the advice of counsel when making the decision to resign rather than face the filing of a written statement of charges for dismissal, this assertion does not hold weight against the totality of circumstances surrounding her resignation. In <u>Stone v. University of Maryland Medical System Corp.</u>, the United States Court of Appeals for the Fourth Circuit addressed plaintiff's—a former professor at the state university medical school— argument that his resignation was the result of coercion or duress because it

---

[158] <u>Sheppard</u>, 436 F.Supp.2d at 340; <u>see also</u> <u>Kirk v. Hockenberry</u>, Civil Action No. 14-CV-713, 2016 WL 374433, at *5 (S.D. Ohio. Feb. 1, 2016)("this factor is not entitled to any significant weight given the substantial amount of time Plaintiff was afforded to make his decision").

occurred in part without the advice of counsel.[159]  In rejecting that argument, the

Stone court stated as follows:

> It is true that Stone was forced to make the decision whether to resign or
> face removal proceedings under some time pressure and that he did so
> without the advice of counsel. Under different circumstances, these facts
> might be sufficient to raise a genuine issue as to the voluntariness of his
> resignation. (Citation Omitted). In this case, however, those facts lose their
> significance when they are viewed against the background of the summary
> judgment record as a whole. Stone was not a naive intern in his first clinical
> assignment; he was a sophisticated and well-educated hospital administrator
> with over thirty years experience as a member of the medical staffs of some
> of the finest hospitals in the country. Despite his counsel's assertions to the
> contrary, the undisputed facts establish that he was fully informed of the
> nature of the charges against him. He knew what his rights were, and if he
> did not, he was given ample time to find out. He was given several hours to
> contact an attorney and failed to do so; his proffered excuse—that all the
> attorneys in the City of Baltimore were at an attorneys' convention—is
> patently incredible. He was permitted to seek the advice of anyone he
> wished and did in fact manage to contact an old friend and fellow surgeon.[160]

Like the plaintiff in Stone, the undisputed facts of the instant case indicate

that Judge had the benefit of fourteen years of experience as both a teacher and

administrator, and was in no way a naïve educator at her first post-graduate

assignment.[161]  Furthermore, as noted above, Judge both signed her Professional

Employees Contract[162] and noted her understanding of School Board Policy #

---

[159] Stone, 855 F.2d at 177.

[160] Id. at 177–78.

[161] See generally Judge Dep. (ECF No. 25-3), Exhibit 17.

[162] Judge Dep. (ECF No. 25-3), Exhibit 13.

317,[163] which both referenced the right to a pre-termination hearing. Therefore, like the plaintiff in Stone, Judge knew of her right to a hearing, and to the extent she had reservations concerning if this applied to her exact circumstances, she had reasonable time to contact an attorney. In fact, unlike the plaintiff in Stone and as previously noted, Judge had more than two weeks prior to her conference with Kelley to inquire as to the consequences her arrest may have on her continued employment. The record, while demonstrating that Judge retained an attorney for representation concerning her pending criminal charges, is absent of any evidence she sought such advice.[164] This failure to seek representation occurred despite the fact that Judge was a member of Pennsylvania Association of Elementary and Secondary Principals (PAESSP), which, as a benefit of membership, provided legal advice to educators.[165]

Having fully addressed the O'Connell factors employed within the Third Circuit, the Court concludes that there is no genuine issue of material fact as to whether Judge's resignation was the product of coercion or duress on the part of Shikellamy School District. Even when viewing the evidence in the light most favorable to Judge, I find that she was presented with two unquestionably unpalatable options—resign immediately or face the filing of written charges and

---

[163] Judge Dep. (ECF No. 25-3), Exhibit 1.

[164] Pl.'s SUMF ¶ 26, at 4–5.

[165] Def.'s SUMF ¶ 52, at 9.

fight termination at a subsequently held hearing. Therefore, because the objective standard as applied to the undisputed facts dictates that a reasonable person in Judge's circumstances would both understand these alternatives and use the reasonable time given to consider them, I find that Judge has failed to rebut the presumption that her resignation was voluntary. Shikellamy School District is thus entitled to summary judgment on Judge's Section 1983 claim for alleged violation of her Fourteenth Amendment right to procedural due process.

### B.    Judge's Breach of Contract Claim

Shikellamy School District next seeks summary judgment on Judge's state law claim for breach of contract.

To plead a cause of action for breach of contract, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by that contract; and (3) resultant damages.[166] Here, Shikellamy School District seeks summary judgment on Judge's breach of contract claim arguing that she has failed to produce sufficient evidence of a breach of an essential term of the employment contract.[167] Specifically, the school district argues that, because the undisputed facts indicate that Judge voluntarily resigned, it cannot be found to have breached Judge's professional contract.[168] Judge, in turn, argues that the

---

[166] See CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa.Super. Ct. 1999).

[167] Def.'s Br., at 14.

[168] Id.

breach occurred because she was constructively discharged without a valid cause for termination under 24 P.S. § 11-22.[169] Judge again argues that her DUI arrest could not serve as a valid basis for termination.

Having previously addressed this issue at length above, I nevertheless reiterate that, to the extent Judge wished to make this argument, her proper method of doing so was to "stand pat and fight" at a pre-termination hearing. If the school board were to issue an adverse finding, Judge would, as previously explained, have had the option to appeal that finding. Judge forfeited that opportunity through her resignation. Therefore, because the undisputed facts indicate that Judge's resignation was voluntary,[170] I find that she has failed to adduce evidence from which a reasonable jury could find that Shikellamy School District breached its contract with her. As such, summary judgment will be entered in its favor.

## V.   CONCLUSION

While Ms. Judge argues that she was coerced into resigning her position as Elementary Principal of Oaklyn Elementary, one passage within her deposition inadvertently yet presciently touches upon the tenuous basis of her legal claims:

> Q. When you handed Mr. Kelley the letter, did you tell him you were resigning under duress?

---

[169] Pl.'s Br., at 14.

[170] Hockenberry, 2016 WL 374433, at *4 (finding that plaintiff's procedural due process and breach of contract claims fail as a result of his failure to rebut the presumption of voluntariness and thus establish constructive discharge).

A. No.

Q. Did you tell Mr. Kelley you were resigning under protest?

A. No.

Q. Did you tell Mr. Kelley that you felt you were being coerced into resigning?

A. No.[171]

Based on the undisputed facts populating the totality of circumstances surrounding her employment, I am of the opinion that, while Judge's comments by themselves are not dispositive, they inadvertently coincide with the conclusion I have independently reached. Holly Judge resigned on June 20, 2014 under neither coercion nor duress and thus she has failed to rebut the presumption that her resignation was voluntary. This finding is based on both my consideration of the O'Connell factors as they relate to her employment, and the recognition that "[i]nvoluntariness is a high standard"[172] requiring that the "separated employee . . . show that the resignation resulted from employment conditions which, under an objective standard, are so unpleasant or so difficult that a reasonable employee in plaintiff's position would resign."[173]

---

[171] Judge Dep. (ECF No. 25-3), at 84:3-13.

[172] Corr, 2016 WL 6901327 at *3.

[173] Stiner, 2004 WL 1949545, at *6 (citing Leheny, 183 F.3d at 228).

Consistent with the preceding analysis, I therefore find that no genuine disputes of material fact remain as to Judge's claims, and summary judgment will be entered in favor of Shikellamy School District.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge